Shippen, C. J.,
after stating fully the will and codicil, and the facts in the special verdict, observed as follows:
The question upon the special verdict is whether Francis had at the time of his death, a vested estate in fee simple, so as that Elizabeth, the lessor of the plaintiff, his sister of the whole blood, on his dying intestate, shall inherit the land as his heir at law; or whether it shall go over to Peter, his brother of the half blood, by virtue of the ' clause in the will of old Peter, devising it to him, in case of Francis’s death under the age of 21, or without lawful issue, as an executory devise.
The solution of this question will depend partly on the general intention of the testator, manifested by the words of the will and codicil, taken all together; and partly, on the rules of law, as to the question whether the intention is such as that it can be legally carried into effect.
As to the question of intention, if judged of from the words alone, as used by a common man unacquainted with technical rules, there cannot arise much doubt but that he meant what the words plainly import ; that if Francis should die within the age of 21 years, or if he should die at any time without lawful children, in either case Peter should take the estate in fee. To this, however, it is objected, that another intention appears; that if Francis should have children, he certainly meant they should succeed to the estate, and that for this purpose it is necessary that the word or should be construed and; otherwise, that if Francis should die under the age of 21, and should have married and left children, those children would lose their inheritance. To this it is answered, that the judges have never taken *the liberty of substituting a conjunctive for a disjunctive, *220] unless to conform to the general apparent intention of the testator; and that Francis, in the present case, being at the time of making the will above 20 years of age, the testator could not have contemplated his marrying, having children and dying before the age of 21, all within the space of one year; and that therefore he must have meant, that either case happening, his son Peter should have the estate.
There appears by the codicil to be some variation of his intention. This codicil was made only two days after the will. In this he forbids his son Francis to sell the land till he arrives to the age of 30, when he might do with it what he pleased. It is contended by the counsel for the defendant, that the plain and obvious sense of this clause is, that the testator meant to substitute the age of 30 for the age of 21 mentioned in the will, and that it amounts to the same thing as if he had said — if my son Francis should die before 30 without issue, I .then give the *220 land over to Peter; but if he should attain the age of 30, whether he has children or not, he shall have an absolute vested estate in fee simple, and may do with the land what he pleases. On any other construction, it indeed does seem difficult to account for his meaning, in postponing his power to sell till the age of 30. If by the will there was a vested fee simple when he arrived at the age of 21, the prohibition to sell till 30 would have been absolutely nugatory.
The question of law arising upon the intention of the testator, it is material to consider. If the words, dying without lawful issue, should be construed to be after a general failure of issue, the devise over cannot take effect; as a fee cannot be limited upon a fee, and the contingency would be too remote and tend to a perpetuity. But if it can be collected with reasonable certainty from the words of the will and codicil, that he meant a contingency, which must happen within the compass of a life or lives in esse, then the devise over will- be good as an execu-tory devise.
The restriction which the law imposes upon executory devises, is founded on the wise principle of preventing real estates from becoming unalienable for generations to come, whereby that property would become useless for the general purposes of a commercial society: but if this tendency to a perpetuity is avoided by the words or plain intention of the devise, the law indulges a testator in the power of bestowing his estate to a second devisee, upon a contingency which must happen, if at all, within a certain specified time, allowed by law. Thus a devise to A and his heirs, and if he die without heirs, to B and his heirs, is not permitted, on account of the remoteness *of this contingency; but if the clause had been to A and [*221 his heirs, and if he die within age, or if he die living B, then to B and his heirs, these are good executory devises, because the contingencies are confined to the period of a life in being. The leading case upon this point is that of Pells v. Brown, in Cro. Jac. 590. Many subsequent cases have been determined to be good executory devises on the principles of the case of Pells v. Brown, where the express words of living W. are not used, as in that case, but where it appears from a fair inference, drawn from any other words in the will, that the testator intended the devise over should take effect within the compass of a life or lives in esse. A strong case of this sort is that of Porter v. Bradley, cited at the bar from 3 Term Rep. 143, where the devise was to his son in fee, but in case he should happen to die, leaving no issue behind him, then over; and this devise over was adjudged to be a good executory devise, the words, leaving no issue behind him, being equivalent to the words, living William, in Pells v. Brown, and meaning leaving issue at the time of his death. This case of Porter v. Bradley, is commented upon in 2 Fearne 208, where it is suggested, that the determination must have gone on the words, behind him, for that if it had stood *221 upon the words, leaving no issue, alone, it could not, consistently with former decisions, have been a good executory devise, as in the case of a real estate those words had been adjudged not to mean leaving no issue at the time of his death, but a general failure of issue. The distinction between a chattel interest and a freehold estate, is made in the case of Forth v. Chapman, 1 Wms. 667, where Lord Macclesfield says, the words, leaving no issue, should have a different construction, as to a leasehold estate, from what it should have as to a freehold; that in the former case, the words should be taken in their natural and vulgar sense, and to mean leaving issue at his death; but as to a freehold estate, they should be taken in their legal or technical sense, namely, after a general failure of issue. Lord Hardwicke was of counsel in the case, and says in 3 Atky. 313, that Lord Macclesfield lay a good deal of weight upon the particular penning of that will, and said it would be a forced construction to have extended the words, leaving no issue, to a dying without issue generally. In the case of Porter v. Bradley, Lord Kenyon seems to have been struck with the impropriety of construing the same words in the same will differently, when applied to real and personal property; and says, a great deal of argument would be necessary to convince him, that in the case of realty, those words should be taken to mean an indefinite failure of issue: and although the same judge, in a subsequent case of *Daintry v. Daintry, in 6 Term Rep. 314, seems *222] to recognize the case of Forth v. Chapman, yet it does not detract from the sound sense contained in his observations in the former case. And although he might think himself bound down by former decisions, yet it is not to be doubted if it had been res integra, but he would have persevered in the idea he had suggested in the case of Porter v. Bradley ; especially as in a subsequent case in 7 Term Rep. 595, he remarks, that he was not prepared to unsay what he had said in Porter v. Bradley, and that small circumstances had been relied on to take particular cases out of the rule. By much stronger reason would he have entertained that sentiment, if he had to decide in such a case, in a country where the spirit of the feudal law has less force; and where the laws themselves, far from being calculated to support the pride of great families, by aggrandizing the heir at law, puts real and personal estates, as to descents and otherwise, nearly on the same footing.
In arguing the present case, the counsel on both sides have discovered great ingenuity. Numerous law cases have been cited and applied. That of Walsh v. Patterson, in 3 Atky. 193, cited on the part of the heir at law, has as far as it goes, nearly the same words, and was attended with the same events as the present case. After a devise to his son in fee, the testator directs, that in case his said son should happen to die before he should attain the age of 21 years, or without issue, he gives the .estate to his wife and to her heirs and assigns for ever ; the son *222 arrived to the age of 21, but died without issue ; th'e Lord Chancellor decided, that it was a vested estate in the son, as he arrived to the age of 21, and though he died without issue, it should not go over to the mother. If the present will had gone no further, this case as well as another in the same book 390, taken with other similar ones, would have been decisive in favour of the plaintiff, as it would be dangerous to shake established rules of property; but where there are additional words and circumstances, that materially vary the cases, courts are not to be held by the trammels of technical reasoning,(from deciding according to the fair meaning of those additional words and circumstances. 2 Fearne, 258. Indeed Lord Chief Justice Wilmot, in Kelly v. Fowler, says, that the court are bound to an artificial and technical sense of the words, unless there is an apparent intention in the testator, of using them in their natural meaning; and for that purpose, which is in favour of common sense, he goes so far as to say, the most trifling circumstance is sufficient. Ib. 245. And in 2 Vez. 121, it is said, the court always inclines to favour that construction which supports the limitation over, if it can be done, *and has laid hold of all opportunities of referring it to the want of issue at the time of the death.[*223
The estate in question, was devised by the father to his son Francis, other real and personal estate having been devised to his younger son Peter. The testator then directs, that in case of Francis’s death under age or without issue, the whole estate devised to Francis, should go over to Peter, and in case of Peter’s death under age or without issue, his estate should go over to Francis; and adds, but in either case, the survivor of my said two sons, shall then pay unto my daughter Elizabeth or her heirs the sum of 500I. The word then plainly refers to the time when both Francis’s and Peter’s estates should be united in one of the two brothers, by the death of one under age or without issue. He had before given to his daughter Elizabeth 1000L, and he meant to give her this additional 500I. only in the event of one of the brothers taking both the estates, devised to them at first separately ; which event must necessarily take place if at all, on the death of him .who shall first die. The words, dying without issue, could not therefore mean dying without ■ issue generally, but so as the survivor might take, 1 Wms. 534, which though a case of personal estate, yet the reasoning upon the word survivor, equally applies to real estates, being upon the intent.’
The general governing intention of the testator, seems to have been, to give his real estate to his two sons, as the principal objects of his regard as to his land, and to give a money legacy to his daughter, and to increase that legacy if one of his sons should enjoy the whole land. If this be his clear, general intention, any subordinate- intentions which may be suggested by ingenious counsel, must give way to it. One mentioned at the bar, struck me at the time with considerable force ; it was, that the testator having burthened the land devised to Francis, with the sum of *223 2300I. payable to Peter, could not have intended, that Peter should have the money, and the'land also, or that Francis should have only a defeasible estate in the land. However, upon further reflection, I considered, that the testator had not only expressly given over the whole estate, which he had devised to Francis, in case of his dying without children, to be benefitted by it, but as the money to be paid to Peter was by instalments at future and distant -days, he might have reasonably thought, that either the events which would entitle the survivor to the land might happen, or that the estate might be actually vested in Francis, before the money should be payable. This idea is naturally suggested by a case in Willes’s Rep. 142, where the land was devised (after the death of A,) to B, she paying to her sisters 500I., and if B died, the land to go over to those sisters.— *On a question whether this devise gave a fee simple to *224] B, it was objected, that the words “if she died the farm “to go over to the sisters,” implied an intent to give to B, only an estate for life ; but the court said, that those words might be intended to mean, “if she died before she paid the money.” In the present case, the money had not been paid to Peter, nor by the terms of the will could it have been paid at the time of Francis’s death. At any rate, an intent collected by conjecture, or a nice refinement, cannot prevail against an explicit intent, collected from the very words of the will.
The greatest difficulty in this case, arises from the objection, that in case Francis had had a child, and died before the age of 21, it could not be the meaning of the testator, that such child should be disinherited. The answer given to this at the bar, was, that Francis was so near that age when the will was made, that the testator could not presume such an event would take place. The event however, though improbable, was not impossible. If it had happened, and a contest had taken place between that child and Peter, the court would certainly have leaned strongly to the child. But it is not a new thing, to construe limitations according to the event, in order to support the intention of the testator. In the case of Doe v. Fonnereau, in Doug. 490, on a devise to his son A for life, and then to the heirs male of his body, and in default of such issue, to his second, third and fourth sons successively, in tail male; Lord Mansfield determined, that the estate should go over to the second son, in one of two events ; if A had issue male, then the second son should have a remainder expectant, barable by a common recovery ; but if A had no issue male, (which really happened,) then the second son should take by way of executory devise. Lord Mansfield supported his decision by two or three authorities ; one was the case of Hopkins v. Hopkins, where Lord Talbot decided, in support of the intent, that a limitation which in one event would have operated as a remainder, but which event did not happen, should operate as an executory devise; and Lord Mansfield said, a great estate was then held under that deter *224 mination; another authority was the case of Brownsword v. Edwards, in 2 Vez. 249, where a devise was held to operate either way, according to the event.
The truth is, that cases on wills are so various that the best law judges have told us, that although adjudged cases must be followed, otherwise the law would be uncertain, yet cases in point on wills, müst be in verbis ipsissimis, and made by testators in the same situation and circumstances, otherwise the indention is to govern, as it appears from each will. Barr, on Stat. 370. 2 Wils. 324. 3 Wils. 247. [*225
Taking the whole case into consideration, with all its circumstances, I am of opinion, that the defendant took the estate in question, by a good executory devise.
Yeates, J.
This case has been argued by the counsel on both sides, with much zeal and ingenuity. Almost every authority in the books, which bears upon the subject, has been marshalled in full array, by the contending parties.
Since the case of Robinson v. Robinson, 1 Burr. 38, which was agitated for near half a century, it is clearly established, that in the construction of a will, we must first look to the general intent of the devisor, and give effect to that; and. if there be a secondary intent, which interferes with it, we are to reconcile the whole, as far as we can ; but in all events, to give effect to the general intention. 8 Term Rep. 9. The general intent is first to be found out, and then as much as language and grammar will permit, particular expressions are to be interpreted accordingly. Lofft. 270. To give effect to the devisor’s general intent, the court will overlook a particular intent, inconsistent therewith. 3 Term Rep. 490. 4 T. R. 87. 5 T. R. 303, 305. 6 Term Rep. 533. 2 Fonbla. 58, 59.
[He then stated the will and codicil particularly.]
The testator died shortly after making his will and codicil. From the statement in the special verdict it appears, that Francis Shitz was 20 years and 10 days old, when the codicil was executed, and died of the age of 22 years, 8 months and 27 days, without lawful issue. • If he died intestate seized of a vested estate in fee simple, the lessor of the plaintiff would be entitled thereto, as sister of the whole blood, and heir at law of Francis.
Judging from the common import of the words of the will itself, there can be no doubt, but the testator intended that Peter should succeed Francis in the enjoyment of the lands, on the event happening on which the limitation over was to take place. Whether this was one or two contingencies, on a fair legitimate construction of the will and codicil becomes the object of inquiry. Upon the grammatical construction, there cannot be the smallest difficulty. The words are “ but in case my said son Francis “ shall die under the lawful age of 21 years or without lawful “issue, then and in that case, I give, &c.” A grammarian could not hesitate to say, that on either event, it was the mean *225 ing of the father that Peter should take the lands devised in the first instance to Francis. But this interpretation has been strongly resisted by the plaintiff’s counsel. They have not, it *is true, gone as far as Mr. Hargrave in his observations *226] on the rule in Shelley’s case ; and asserted, that their rule of construction possessed “ a quality rigid, stubborn, im “ perious, irresistible, and so indispensable, as to be above all “ exception whatever, and proudly disdained all compromise of “ differences, and all participation of power.” Hargr. Law Tracts, 562, 574. 4to ed. But they have contended, that an uniform series of judicial decisions has accurately defined the technical sense of the words made use of by the testator, and that the specific words have gained a fixed legal import by construction, which have since become the sacred, inviolable land marks of property, binding on all judges. 1 Burr. 233. 7 Term Rep. 658. 8 T. R. 67. That counsel have actually refused to argue such a case. 7 Term Rep. 668. And that we are bound by the authority of those decisions, as firmly as the Pagan deities were supposed to be by the decrees of fate. Jones on Bailments, 46. They have insisted that no instance can be shewn, where on an antecedent estate in lands given by a will, with a limitation over in case of the first devisee dying under age or without issue, that the estate went over, in case the devisee arrived at full age, though he died without issue. They have relied on this, that the expressions in the will before the court form but one contingency.
If such be our official duties, it certainly becomes us to submit to them with due deference ; but it is fitting that in such a case we should make a solemn pause, and consider well the adjudications and their grounds, before we form our opinions.
I shall now therefore take the liberty of reviewing the authorities cited by the plaintiff’s counsel, and some others of the same kind, which have occurred to me, in my researches on this subject, though I fear, the enumeration will be tedious.
In Chapman v. Dalton, Plowd. 289, several cases are put, where words in the copulative shall be taken in the disjunctive, if such sense be most strong .against those that speak them; and vice versa. They shall be taken in such way, as will make the words stand with reason, and the intent of the parties.
In Wollon v. Cook, 1 Anders. 55, the word divers in an agreement is said to be a word indifferent; and shall be construed according to the sense, in which it is used in the subject matter.
In Baldwin v. Cocks, 1 Leon. 74, a lease was made to Truepenny and one Elizabeth Rede for 21 years, if the said T. and E. or any child or children betwixt them begotten should live so long; E. died within the term without issue; and adjudged, that by the death of E. the lease was not determined. For the *disjunctive before (child) makes all the limitations in the *227] disjunctive.
In Soulle v. Gerard, Cro. El. S. C. Moor. 422. Noy. 64, 525, *227 devise to one of four sons and his heirs for ever, and if he die within age or without issue, to his three other sons jointly. The devisee had issue a daughter, and died within age, ’and it was adjudged that he took an estate tail. This case is said by Lord Chief Justice Willes to be of little authority. Willes’ Rep. 311. (though it seems to be recognized in 1 L. Raym. 506. Sed vide S. C. 12 Mod. 277. Corny. 95, and 3 Term Rep. 474) and to be stated but obscurely; but that the intent of the testator was clear and manifest, which guided the construction.
In Paine v. Mallory, Cro. El. 832, a lease was made by an abbot, rendering rent during the term to him or his successors ; and held to be a good reservation to him and his successors, by reason of the express intention and reservation.
In Daniel v. Waddington, Cro. Jac. 377, one joint-tenant made a lease for years, if he and his companion live so long. The court held the lease to be determined by the death of either of them; for it is, if they two live so long. It was refused to change and into or.
The case of Hanbury v. Cockerel, cited in 2 Fearne 18, from 1 Rol. Ab. 384, (though I.do not find it there, but observe it cited Hardr. 150) has been referred to by the plaintiff’s counsel. There the contingent remainder could not take effect, as the contingency of the son dying under 21 and without issue had never happened. All the preliminaries must happen before the remainder can take effect. Hard. 150. The same principiéis laid down in Doo v. Brabant, 3 Bro. Ch. Rep. 390, Scott v. Chamberlayne, 3 Ves. jr. 302, and in many other books.
In Sayer v. Glean, 1 Lev. 55, in debt on a bottomry bond, where the money was payable on several contingencies in the disjunctive; it was resolved that the money became due on the first contingency happening, and that the law would supply the want of those words in the instrument.
Collinson v. Wright, 1 Sid. 148, was cited at the bar. On this case, Powell in his treatise on devises 252, accurately points out the distinction between the words, “ and if he die without isstie,” (used with reference to the first devisee) standing alone, and the words “and if he die without issue living A." or the like, or “before A. arrive at 21 years of age," &c. so used. For the former words operate only as an explanation of the testator’s intent, who shall succeed, namely issue of his body; and whensoever the devisee dies without issue, the land will remain over. But the latter words qualify the preceding ^estates with a collateral determination, give effect to a [*228 conditional limitation to another, if such an event happen, and operate as a complete defeazance of the first fee upon that event; but by no means tend, independent of such event, to abridge or narrow the extent of the estate first limited, or to reduce it from a fee simple to an estate tail. 1 Sid. 445. Dy. 354. Cro. Jac. 590. This distinction is also applicable to Clache’s case, also cited by the plaintiff’s counsel from Dy. 330, b. 331, a.
*228 In Hall v. Philips, 1 Vent. 62, on the construction of the excise act of 15 Car. 2, c. 11, the word or was construed and, on the ground of general apparent inconvenience, that would follow from the clause being construed in the disjunctive; for otherwise, this act, which was made to be further remedial to the king, would rather disappoint the revenue of excise, given by former statutes, which required an entry to be made.
Price v. Hunt, Pollex. 645, was read by the plaintiff; In that case, the argument of Pollexfen for the defendant went on three grounds, xst. That whether the word or was taken in the disjunctive or conjunctive sense, the plaintiff had no title. 2d. That the plaintiff’s construction would defeat the intention of the testator, and disinherit the issue of the son, if he had died before 21. And lastly, that the meaning of the testator was plainly expressed, that his son should have the lands to him and his heirs and assigns forever, and freely to give, settle or dispose of the same, at his pleasure. Pollex. 648, 650. On which of these grounds the court went does not appear.
In Hilliard v. Jennings, (said in 1 Bl. Rep. 101 to be best reported in Carth. 514,) S. C. 12 Mod. 276, 1 Ld. Raym. 505, 1 Freem. 509, Corny. 90, 94, there was a devise much resembling the case before us. The testator devised to his son Thomas and his heirs forever, his manor of E. ; but if it should happen that his said son should die before he attained the age of 21 years, or without issue of his body, then his lands should be divided between his daughters Mary and Elizabeth, and their heirs forever. Thomas, the son, entered and became seized, prout, &c. and having arrived at full age, devised to the plaintiff: — ■ and it was held, that Thomas, the devisee, took only an estate tail In 1 Freem. 510, it is stated, that the court inclined against the plaintiff, that the son had but an estate tail, and so the devise to the daughters took effect, the son having died without issue. For though it is devised to him and his heirs, yet the latter words, if he die without issue, make it an estate tail; because his meaning seems to be plain, that if his son had issue, the issue should have it, if not it should go to the daughters. According to the report in 1 Ld. Raym. 506, Lord Chief Justice *229] *Holt said, there is no necessity to construe or as and. The case of Soulle v. Gerard was adjudged to be an estate tail; and it may be it was the father’s design to restrain the marriage of his son before the age of 21 years. In 12 Mod. 277, the same sentiments are ascribed to Lord Holt, and that he afterwards denied the case of Soulle v. Gerard to be law. It appears by that book that judgment was given for the defendant.
We may confidently pronounce, that this case forms a striking exception to the inviolate uniformity of the rule of construction contended for by the plaintiff’s counsel, and that their observation on this head was not made with their usual accuracy.
In Woodward v. Glassbrook, 2 Vern. 388, the testator devised *229 houses to his several children in tail, but if one of them should die before 21 and unmarried, such child’s part to go over to the surviving children; the Lord Chancellor would not suffer and to be read or. If any of the children died unmarried, though above the age of 21, his share shall go to the survivors.
In Regina v. Baines, 2 Ld. Raym. 1201, it was said by Broderick, arguendo, that joint words in a pardon may be construed severally, according to the subject matter.
In Richardson v. Sprang, 1 Wms. 434, a mother devised money in trust for such of her daughters, or daughter’s children, as should be living at her son’s death. Some of the daughters were living at the son’s death, and had also children, and others were dead leaving children. The Master of the Rolls held, that the word or should be taken for and, because otherwise the whole devise would be void for uncertainty; the word or might possibly have been of use, in regard all the daughters might have died in the life time of the son.
In Right v. Hammond, 1 Stra. 427, the plaintiff’s counsel contended, that the word or in a devise should be construed and. The court gave no opinion on that point, but held that the devise to the defendant was not good, either as a contingent remainder or executory devise. Besides, the contingency had never happened, on which the defendant’s title rested. The cases of Read v. Snell, 2 Atky. 643, Walsh v. Patterson, 3 Atky. 193, Barker v. Suretees, 2 Stra. 1175, and Framlingham v. Brand, 3 Atky. 390, have been severally cited by the plaintiff’s counsel, and much relied on. It will be found in each of them, that they were determined, in order to effectuate the intention of the several testators. 3 Term Rep. 473, per. Ld. Kenyon.
In Haws v. Haws, 1 Vez. 13, 3 Atky. 524, 1 Wils. 165, and in a will was construed as or, to correspond with the clear intention of the testator.
In Jackson v. Jackson, 1 Vez. 217, testator devised leasehold *after the death of his wife, to his son R., for so many years, &c. if then living; but if then living and should [*230 then or hereafter have issue male, to him absolutely, otherwise over. R. dies in the life of the wife, leaving a son : it belongs to the son as representative of R.; and shall be construed or, to make the words answer the intent.
In Brownsword v. Edwards, 2 Vez. 243, the testator devised to trustees in fee, until John Brownsword should attain the age of 21, and if he should attain 21, or have issue, then to the said John and the heirs of his body; but if the said John should die before 21 and without issue, then over to Sarah Brownsword, exactly in the same words as in the former devise. John, the first devisee, attained 21 and died without issue. An estate tail vested in John at 21, or on having issue; and Lord Hardwicice laid it down, that in cases of wills, the governing rule of construction is the intention of the testator, which the court is to find out by his words, and to construe conformable thereto, so *230 far as it is possible, consistent with the rules of law. There was no necessity in this case, to range words in a different order, or to transpose them, to comply with the intention, or to supply material words'.
In Wright v. Kemp, 3 Term Rep. 470, occurred the case of a surrender. In pa. 473, Lord Chief Justice Kenyon thus expresses himself : where sense requires it, there are many cases to shew, that we may construe the word or into and, and and into or, (2 Stra. 1175 and 3 Atky. 390,) in order to effectuate the intent of the parties. Here therefore, in order to give effect to the intention of the surrender or, we must say, that when he used the word or, he meant and.
In Beachcroft et al. v. Broome, 4 Term Rep. 441, under a devise to A and his heirs, but if he die without settling or disposing of the same, or without issue, then over. A did settle and dispose of the estate given to him, and died without issue. The court said, there was no doubt but the devisor intended, that he should have the power so to do. It was impossible to raise any serious doubt in the case.
This was the case, which the counsel for the defendant declined to argue.
In Doo v. Brabant, 3 Bro. Cha. Rep. 393, S. C. 4 Term Rep. 706, there was a devise to trustees, in trust for A till 21, then to transfer to A, but in case A should die under 21, leaving children, then to the children; and in case A should die under 21, without children, then to the nieces of the testatrix. A attained 21, but died in the life of the testatrix, leaving issue born before *231] she attained 21. was held at law, that the events a I pointed *out not having taken place, the children took nothing under the will.
In Doe v. Burnsall, 6 Term Rep. 30, the testator devised all his estate to A, and the issue of her body, as tenants in common; but in default of such issue, or being such, if they should all die under 21 and without having issue, then over; Lord Chief Justice KenyON lays down the law on the subject accurately, as follows : There is no doubt, but that a word of conjunction in a will has been construed in the disjunctive, and vice versa a disjunctive construed into a conjunctive, where it has been necessary to give effect to the devisor’s intention; but unless there be something in the will, from which it is to be collected, that the devisor did not use such words in the grammatical sense, the grammatical sense must prevail. In the present case, the word used is a conjunctive word and; now by construing that word in its proper sense, we shall give effect to the intention.
In a late case in 1797, Maberly v. Strode, 3 Ves. jr. 450, there was a limitation over in a will, upon the death of a person unmarried and without issue ; by which it would seem at first sight, that there should be a concurrence of two events, before the gift over was intended to take place. The devisee did marry, but died without issue. The master of the rolls held that " unmar *231 “ried,” in its usual sense, meaning “having never been married,” and unless ««¿/was read or, the latter words “as to his “ dying without issue,” had no meaning, (that being the necessary consequence of dying unmarried,) the bequest over had taken place on the single event of the devisee dying without issue, in order to give a fair and reasonable construction to the will. Hence it appears, in addition to the general principle laid down in the case preceding, that the substitution of words is regulated solely by the manifest intention of the testator.
I have thus taken a cursory review of the cases on this subject. I sensibly feel, that I have consumed time unnecessarily, and might have availed myself of Lord Kenyon’s rule in Doe v. Burnsall. But I had prescribed that task to myself.
'The result I think, we may venture to assert to be,' that the court will transpose, insert and reject the most operative words, to give effect to the general intention of a testator, 2 Fearne 271, 272, 4 Ves. jr. 311, 329; — will deviate from the meaning of technical words in a will, for the same purpose, if the rules of law are not thereby violated, Bos. and Pull. 256, 3 Burr. 1634;— but will never take the unwarrantable liberty of contravening or disappointing a will, unless it be contrary to law; and the principle, that wills must be consistent with the rules of law, is not to be applied to the construction of words, but to the nature of *the estates themselves. To argue, that the intention [*232 shall be frustrated by a rule of construction of certain words, is to say, that the intention shall be defeated by the use of the very words which the testator has adopted as the best to communicate his intention, and of which the sense is intelligible to all mankind. 2 Bla. Com. 385. Christian’s note, (13.) The testator is presumed to be inops consilii, and therefore though he uses inapt and barbarous words, the law will so frame and mould them, as to make proper sense to serve the intent. 1 Vez. 146. 2 Atky. 130. 1 Collect Jurid. 389.
If the intention of a testator be clearly and manifestly contrary to the legal import of the words, which he has hastily and unadvisedly made use of, (Per Blackstone, J. in Perrin v. Blake, Hargr. Law Tracts, 495, 4to. edit.,) the technical rule of law shall give way to this plain intention of the testator. 2 Wms. 673. 4 Burr. 2246. 4 Bro. Cha. Rep. 460. This has been the law for four centuries at least, if not longer. It is said by the judges in 9 Hen. 6, pa. 24, that a devise is marvellous in its operations, and many instances are given, where it may countervail with the ordinary rules of law. The like doctrine is to be met with in every reporter since. But then this intention of the testator, which is to ride over and controul the legal operation of his own words, must be manifest and certain, and not obscure or doubtful. 6 Co. 16. The intent must not be conjectural, but by declaration plain. Hob. 33. There must be plain expression or necessary implication of his intent. 2 Vez. 656.
It is difficult to ascertain, that the testator in the will before *232 the court meant to restrain his son Francis from marrying in his minority, as was said in Lord Vaux’s case, Cro. El. 269, and by Lord Holt in Hilliard v. Jennings, 1 Ld. Raym. 506. 12 Mod. 277. But it is certain, that the conjecture was not founded on a probable calculation of chances, if the testator contemplated a concurrence of events; of his own death, of his son’s marriage, and of his having issue within a less period than one year after the making of his will. I freely admit, that according to the defendant’s construction, every clause in the will is not rendered consistent; particularly, in the instances of the large payments which should have been made to Peter, before his brother attained 30 years of age; and yet that Peter might afterwards take the lands to the great detriment of his brother’s personal representatives; and that as it cannot be denied, but that Francis might have sold the lands after he was 30 years old, the survivorship therein, would be defeated thereby. In the premature death of Francis, no money was payable to Peter. The testator 'was illiterate. He could not even write his name, *233] but *made his mark to his will and codicil. His want of comprehension of mind was not probably greatly aided by his scrivener; and they did not together, in all likelihood, view or calculate on t[ie several events which might happen in the intended disposition of his estate. But he could not have forgot his great primary object, to whom his lands should go after his death. He has, in my idea, fully provided on that head, in direct terms, which remove all doubts from my mind. I concur in the authority of books-cases on the construction of wills; but where they do not precisely correspond in every essential particular with the case under consideration, I feel myself at perfect liberty to collect the intention of the testator from his own written words, which will outweigh with me all arguments drawn from an obscure and doubtful intention.
Whether the direction of the testator was impotent or not, he certainly intended by his codicil, that Francis should not sell the lands devised to him till he was 30 years old. In case Francis died under the age of 21 years, or without issue, he expressly gave his share'in his whole estate to Peter his son in fee. In the event of either of his sons dying under age or without issue, the survivor taking the whole estate shall then pay unto Elizabeth 500I. But if Peter, as events have occurred, should not succeed to Francis, the $ool. could not be raised for Elizabeth, as the two estates would continue divided, and her husband, if he had lived and survived hex, would by this construction have held the premises during his life, notwithstanding the jealousy expi-essed of him in the will. Moreover, the mutuality of survivorship between the brothers on the occurrence of the events pointed out, is a strong additional argument in support of the construction contended for by the defendant.
The genex-al rule certainly is, that devises shall stand as at the time of making the will, and shall not be construed by any after *233 act, or collateral contingency, Talb. Cas. 26, or subsequent circumstances. 1 Ves. jr. 475. But as has been already observed, there have been cases where it has been held in support of the intent, that a limitation over, which in one event would have operated as a remainder, but which event did not happen, should operate as an executory devise. Talb. Cas. 50. 2 Vez. 249. Doug. 490, 491. 2 Fearne 494 to 498.
Combining the will and codicil together, as one instrument, I have no hesitation in saying, that the testator has manifestly and certainly expressed his meaning, that on Francis dying without issue under the age of 30 years, he intended that Peter, if he survived him, should hold the premises in fee.
The next question which presents itself is, whether this intention *be compatible and consistent with, or repugnant and contrary to, the rules of law. For it is clear, that a [*234 man cannot create a perpetuity by will; he cannot put the freehold in abeyance ; he cannot limit a fee upon a fee, nor make a chattel descendible to heirs; nor prevent a tenant in tail from suffering a recovery. Per Buller Just. Doug. 327.
It would be a waste of time to cite authorities to prove at this day, that if an estate be given to A in fee, and by way of executory devise an estate be given over, which may take place within a life or lives in being, and 21 years, and the fraction of a year afterwards, the .latter is good by way of an executory devise. 7 Term Rep. 558, 595. We need not call in the aid of eminent law characters to shew, that in cases of this nature, there is no magic or particular force in certain words more than others. Per Ld. Hardwicke, 1 Vez. 142. 2 Atky. 246, 570, 577. Per Buller Just. Doug. 327. Per Lord Chief Justice Kenyon, 3 Term Rep. 473. Their operation must arise from the sense they convey.
I throw no stress on the cases which have been cited by the defendant’s counsel, of limitations over of personalties. They are fully commented on in 2 Fearne 167, &c. 2 Fonbla. 326, &c. I take the correct rule to be, that where there is a limitation over of real estate, on a dying without issue generally, without other words expressly restrictive of their operation, that such expressions ought to be construed an indefinite failure of issue, and the limitation over as too remote. This I think has been abundantly shewn by the plaintiff’s counsel, and that there exists a clear distinction in the construction of limitations over of real-ties and personalties in England. 2 Fearne 194. 3 Atky. 289, 396, 397, 398. 3 Wms. 261. 2 Vez. 180, 616, 683, 325. 6 Term Rep. 312, 313, 314. Cowp. 411. 3 Term Rep. 494.
But I think expressions have been made use of by the testator here, which confine the contingencies to the compass of time allowed by law, and are the same in effect with Pells v. Brown, Cro. Jac. 590, thoughmot in terminis; and that there is not the smallest danger of a perpetuity in the present instance. Prec Cha. 68, 69. Because,
*234 1st. The words assigns forever, are attached to the first de vise, which formed one of the grounds of decision in Porter v. Bradley, in 3 Term Rep. 143. 2 Fearne 209.
2d. The words, then and in that case, may fairly refer to the time of the events happening, when Peter shall become entitled, according to what is said by Ld. Kenyon in 7 Term Rep. 557.
3d. The surviving brother was in either case to take the property devised to the other.
,,, -, And 4th, which is the strongest ground, the payment of the 500I. to Elizabeth, the sister, is fixed as a cotem-porary act to be performed by the survivor, who was then to pay her the money when he took the land. At any rate, it could not exceed the year 1810, when all the payments would be completed. This excludes the idea of an indefinite failure of issue.
There is nothing in the will to shew that the testator intended that the limitation over should not take effect till future generations ; but on the contrary, there is sufficient to shew the intention, that the estate should go over immediately on the death of Francis without issue, and should vest in Peter surviving at the time of the death of Francis, under the age of 30 years.
The plaintiff’s counsel relinquished this point on the last argument. If it needed further support, it has been urged, that the inconvenience of perpetuities is the reason for confining executory limitations and future uses to their proper bounds. But the effect. of any limitation or proviso, in respect to creating a perpetuity, ceases where such limitation or proviso is made subject to the power of the person on whose estate it is to operate; and the moment it becomes capable of being barred or destroyed by him, it can no longer be said to tend to a perpetuity, any more than an estate tail with a remainder over does ; which estate and the remainder over, are capable of being barred by the tenant in tail. 2 Fearne 81, 107, 108. In proof of these positions, several cases have been cited by the defendant’s counsel.
I will only add, that courts will always incline to favour such a construction as will support the limitation over, if it can be done, and will lay hold of any opportunity of referring, dying without issue, to a want of issue at the time of the death, even in the case of a deed. 2 Fearne 272. The case of Exel v. Wallace, 2 Vez. 118, furnishes a strong instance in support of this principle.
Upon the whole, I am of opinion, that the devise to the defendant, under the circumstances stated in the special verdict, is good by way of executory devise, and that he is entitled to judgment.
Smith, J.
As the Chief Justice has arranged the facts resulting from the special verdict, and the will, which is part of it, fully and accurately, I deem it unnecessary and improper, to take up time in giving my statement. With- the will, the special verdict and the statement, which have been read by the Chief *235 Justice, as much in my view as if I had read each of them, I proceed to consider the merits.
*But before I enter into the discussion, I think it proper to banish from my mind, one circumstance, which certainly [*236 ought not to have been brought into view, nor even glanced at. The merit or demerit of the parties cannot weigh a grain in either scale, in deciding a question of law, on special verdict.
The cause has been exceedingly well argued on both sides. A very great number of cases indeed have been cited. The counsel have displayed industry and attention, in collecting perhaps most of the cases material in the discussion. They have also shewn a discriminating judgment, in the selection and arrangement of the cases produced, and perhaps we are obliged to them for not enlarging the number, as the cases in the books in this branch of the law would probably fill a volume, and require as much paper, as would sometimes cover the land in dispute. If they have not been able to produce a case in point, it is, I take for granted, because no such case exists. Indeed, cases upon wills may guide as to general rules of construction. But unless a case cited be in every respect in point, and agree in every circumstance, with that in question, it will have little or no weight with the court. 3 Wils. 142. S. C. 2 Wills. 324. Per Wilmot, C. J. For it is difficult to find two cases, that agree with each other, in every respect. Per Willes, C. J. Willes 312. Bos. and Pull. 256. Particular cases serve rather to obscure and confound, than to illustrate questions of this kind. Per Wilmot, J. Burr. 1541. One judge of no mean talents, goes so far as to say — indeed I have long been tired of looking into cases upon wills. Per Rooke, J. Bos. and Pull. 263.
No certain rule is to be laid down in the construction of wills, but they must depend upon their particular circumstances. Per Lord Hardwicke, 2 Atky. 374. 2 Bla. 382. Decisions upon other words something like those in question, in other wills, where the whole context of those other wills must be gone into, can afford very little assistance. Per Eyre, Bos. and Pull. 258.
In one sense, I have been tired by looking at the book cases, on the present occasion ; but by an attentive examination of the numerous cases cited, and of some which were not cited, I have been enabled to form an opinion satisfactory to my own mind, founded I believe, on solid principles of law, and giving effect to the general intention of the testator.
As to book cases on wills, my own opinion is, that unless they are in the very point in every particular, they are not authorities to compel us to defeat the intention of a testator; but that analogous cases are often useful in furnishing us with arguments in answer to the reasonings and ingenious glosses, made use of to defeat such intention. Cases in point always, *and analogous cases frequently, enable us to give effect p to the intention of a testator, when it is not inconsistent [*237 with the clearly established rules of law.
*237 I proceed to state and apply such general rules of law, as are applicable to the case before us, which must guide, direct and govern us in the decisions of it; premising, that within a century past, a more liberal construction of the words of a testator has prevailed, and they have been generally taken in their popular sense, which is mostly likely to have been his meaning. Per De Grey, 2 Bla. Rep. 1012.
1. The general principle is, that the heir takes all, which is not given for a defined and specified purpose by the will. 2 Ves. jr. 271. There is no other way to exclude the heir, than by giving the estate in question to some body else. 2 Ves. jr. 225. Cowp. 661.
2. I lay it down as clear a position, that the heirs shall never be disinherited by implication. 1 L. Ray. 185, arguendo. Vaugh. 262. If such implication be only constructive and possible. Cowp. 92. Not by conjecture, ambiguity or uncertainty. It is laid down in many books, that he is not to be disinherited, unless by express words, or a necessary implication. Vaugh. 262-3. 3 Atky. 10. Prec. Cha. 384, 440, 471. Burr. 1686. Ray. 453. Willes 650. 3 Wils. 418. 7 Bro. P. C. 350. Willes, C. J. says, the rule is not as laid down in Vaugh. 262-3, that an heir shall not be disinherited except by express words, or such as have a necessary implication. But the rule is, that the intent of the testator ought to appear plainly by the will itself; otherwise, the heir shall not be disinherited. He cites several adjudications to prove, that this is the rule. Willes 140, 309, 297. Burr. 1541, 1686, per L. Mansfield.
3. It is not seventy years, since Sir J. Jekyll, master of the rolls, declared, there is a diversity of opinions among the learned judges of the present time, whether the legal operation of words in a will, or the intent of the testator, shall govern. For my part, I shall always contend for the intention, where it is plain; and I think, the strongest authorities are on that side. P"or if the intention is sometimes to govern, as it is admitted it must, and not always give way to the legal construction, and yet at other times shall not govern, there will then be no rule to judge by, nor will any lawyer know how to advise his client; a mischief which judges ought to prevent. 2 Wms. 741.
I believe no such diversity of opinion noiv exists among judges, or lawyers. For the intention of the testator is now looked upon, as the polar star, directing them in the construction of wills, provided it be not inconsistent with the rules of *law. Burr. 1112-3. 1 Wils. 142. Willes 296-7. There *238] is no rule better established, than that the intention of a testator, expressed in his will, if consistent with the rules of law, shall prevail. Doug. 327. Burr. 1112. Amb. 377. 3 Atky. 234. 1 Fonb. 142-3. 1 Bla. 377.
The intention of a testator is to be collected from the whole of his will, ex visceribus testamenti, so as to leave the mind quite satisfied, about what the testator meant. This is the *238 principle. Per Wilmot, Burr. 1541, 1686, 770, 922. 3 Atky. 526. 1 Vez. 169. Black. 738. 1 Wms. 741. 1 Atky. 416. Willes 3.
There can be no technical words in wills, but they are to be construed according to the intention of the parties. Per Henley, L. Keeper, 4 Term Rep. 297 in note. 1 Atky. 468, 470. Bos. and Pull. 256. Willes 350-1. Burr. 770. No precise form of words is necessary. Black. 377. Burr. 272, 770. I will depart from the technical sense of words to effectuate the intention of the testator, as far as I can, without violating the rules of law. Per Eyre, Bos. and Pull. 257. If a testator make use of legal phrases, or technical words only, the court are bound to understand them in a legal sense; but if he use other words, which manifestly indicate what his intention was, and shew to a demonstration that he did not mean what the technical words import, that intention must prevail. Per Buller, Doug. 327.
To attain the intent, words of limitation shall operate as words of purchase ; implication shall supply verbal omissions ; the letter shall give way; every inaccuracy of grammar, every impropriety of terms shall be corrected by the general meaning if that be clear and manifest. Per Lord Mansfield, Burr. 1634-5.
No words of my own can convey my opinion on this point more forcibly than those of Lord Chief Justice Willes. “I “ will in the first place find out what was the intent and mean- “ ing of the testator; because if the intent be clear and not in- “ consistent with the rules of law, I will always endeavour, if I “ possibly can, that the intention of the testator may take effect, “ and will never take pains to find out little niceties in the law “to defeat the intent of the testator.” Willes 350.
4. It may now be considered as an established rule of construction, that if the court can see a general intention, consistent with the rules of law, but that the testator has attempted to carry it into effect in a way not permitted, the court is to give effect to the general intention, though the particular mode shall fail. By the Master of the Rolls, 4 Ves. jr. 329. Instances of this are found in 1 Burr. 51. 3 Atky. 736. 1 Wms. 333.
By Robinson v. Robinson, 1 Burr. 38 to 51, which was sifted *and considered more than any preceding case, this position [*239 is clearly established, that in the construction of a will we must first look to the general intent of the devisor, and give effect to that; and if there be a secondary intent which interferes with it, we are to reconcile the whole, as far as we can ; but at all events, to give effect to the general intent. In that case the special intent was defeated, and to attain the general intent, the construction was contrary to the express words. Per Ld. Kenyon, 8 Term Rep. 9. 4 Term Rep. 87. 1 Burr. 51. 3 Atky. 736. 2 Vez. 232. 5 Bro. P. C. 286. 2 Wils. 323. Willes 350, notes. 5 Term Rep. 303. 7 Term Rep. 533.
5. Executory devises were utterly unknown to the common law. Fulmerston’s case, 38 Eliz., was the first of them. 1 Stra. *239 130. They have obtained, with much ado, and for some time after they prevailed, were looked upon with a jealous eye, lest they should run into a perpetuity. They were confined to a life in being; and so late as 11 Will. 3, Treby, C. J., declared, that further they should not go, with his consent; 12 Mod. 287, Stra. 958. By the judges of B. R. at first. 2 Wils. 64. 2 Equ. Abr. 349. Just before this, viz. 1697, the house of lords extended them to one year after a life in being. Prec. Cha. 73. Show. P. C. 137. 18 Vin. 405. Stra. 130. 10 Mod. 422. On the authority of 2 Mod. 289, it was adjudged in 1736, though with reluctance, that a devise to such unborn son of A as should attain the age of 21, (i. e. 21 years after a life in being,) was a good executory devise. Talb. Cas. 232. 2 Black. 174. Lord Mansfield says, the court in this case took a large stride of 21 years, after a life in being. Doug. 490. The time is now extended to a life in being, and 21 years and some months, allowing for the time of gestation. 7 Term Rep. 102, 558. Willes 213. 7 Term Rep. 103, note.
Of late years, the doctrine of executory devises has been settled. It is extremely well settled by Ld. Kenyon in 7 Term Rep. 558. They have not been considered as bare possibilities, but as certain interests and estates, and resemble contingent remainders in all others respects, only they have been put under some restraints, (viz. confined as aforesaid,) to prevent perpetuities. Willes 213. 7 Term Rep. 103, note. 7 Mod. 302. 8 Vin. 112. Talb. Cas. 117. They are devisable. 1 H. Bla. 32. 3 Term Rep. 88. 1 Fearne 544. The court always inclines to favour that construction which supports the limitation over, if it can be done, and has laid hold of all opportunities of referring it to a want of issue at the time of the death. 3 Wms. 260. Talb. Cas. 56. These are cases of chattel interests.
6. It is contended, this rule of construction is confined to Chattel interests, and does not extend to estates of freehold; *240] that a different construction must be put upon the very same words in a will, as applied to real or personal estate; that a devise to A and his heirs, and if he die without issue, or leaving no issue, then to B, if the devise be of a chattel interest, these words will be construed in the vulgar and natural sense ; and if A die without leaving issue at the time of his death, the devise over is good. But if there be a freehold also devised by the same words in the same will, the same words must be construed in their technical, legal, and (must I add unnatural) sense, and extend to an indefinite failure of issue, and there the devise over be void!
If such be the settled rule of law, if such construction has become a rule of property, however absurd I may deem the distinction, although I may be convinced that it defeats the intention in the disposal of their real estates of 99 out of 100 testators, who make their wills without the assistance of able counsel, yet I certainly shall not be the first to shake it, or any *240 other settled rule of property. If this or any other rule of property has crept in, or shall creep in, through inadvertency or otherwise, which by experience shall be found to be contrary to reason, defeating the intention of testators, or inconsistent with the general interest; if any of the rules of property established in that country from which we derive the foundation and general outline of our laws, which rules, though very proper for the state of society and constitution of that country, may be found improper for the state of society among us, or inconsistent with the spirit of our constitution and government, the legislature can, and no doubt will, on proper representations, make from time to time such alterations as may be necessary to regulate property in a manner most conducive to the general interest of the community. We must declare the law, when clear, without regarding consequences.
This distinction is stated in Forth v. Chapman, 1 Wms. 663, which is relied on in several subsequent cases. 3 Wms. 261. 3 Atky. 288. 2 Atky. 647. Talb. Cas. 250, 1 note. 2 Vez. 180, 616. Willes 313. Cowp. 411. 6 Term Rep. 314, to answer best the intention of testator. 1 Burr. 272, to support his intent.
Lord Chief Justice Kenyon says, the distinction in Forth v. Chapman was not comformable to reason, but if it had become a rule of property, it might be dangerous to alter it: that it had been quarrelled with by different judges, and that small circumstances had been relied on, to take particular cases out of the rule. 7 T. R. 595.
Lord Hardwicice says, he was counsel in it himself, and by *'the note which he took on the back of his brief, Ld. Macclesfield laid a good deal of weight upon the particular [*241 penning of this will, if either of his nephews, William or Walter, should depart this life and leave no issue of their respective bodies : these words must relate to the times of their death, and it would be a forced construction to have extended it to a dying without issue generally. 2 Atky. 313.
The question in such cases is, whether from the whole context of the will, we can collect, that when an estate is given to A, and his heirs for ever, but if he die without issue, then over, the testator meant dying without issue living at the death of the first taker. The rule was settled in Pells v. Brown. It is a question of construction depending on the intention of the testator. 7 Term Rep. 595, 6. As soon as the intention is known, there is an end of the question. Per Lord Kenyon. Ib. 557.
. A devise of land to A. and his heirs and assigns for ever, and if he die, leaving no issue behind him, then to B. over, is good by way of executory devise; for the words if A. shall die leaving no issue behind him, are equivalent to the words, if A. die without issue, living W. (which was Pells v. Brown’s case.) Besides here, the testator devised, that if B. died before A. and A. should not leave issue of his body, the lands should be sold *241 and equally divided between the testator’s six daughters ; which conveyed his idea, that this event was likely to happen in the life time of his widow, or of his son B. or of his daughters. 3 Term Rep. 143, 6.
So a devise to A. and his heirs for ever, and in case he should depart this life and leave no issue, then to E. M. and S., or the survivors or survivor of them, share and share alike ; — the devise to E. M. and S. is a good executory devise of the land. 7 Term Rep. 589.
8. There is no doubt indeed, but that a word of conjunction in a will has been construed in the disjunctive, and vice versa, where it has been necessary to give effect to the testator’s intention ; but not unless there be something in the will, from which it is to be collected, that the devisor did not use such words in the grammatical sense. 6 Term Rep. 34. Pollex. 645. 1 Sid. 148. 1 Ld. Ray. 506. 8 Vin. 187.
It has always been determined, that where an estate'is given to a man and his heirs, and in case he die before 21 or without issue, then over, or is construed and; for this plain reason, that if a contrary construction should prevail, the devisee might have a son born before 21, and if the father should die before 21, such 21 *son would be disinherited. 9 Mod. 445. 1 Wils. 140. *242] 2 Stra. 1175. 1 Vez. 98.
9. In Hopkins v. Hopkins, Talb. Cas. 43, Lord Talbot decided in support of the intent, that a limitation, which in one event would have operated as a remainder, should on another event happening, operate as an executory devise. This he did upon principle, without precedents, and a great estate is said to be now held under it. Doug. 491, 2. 2 Fearne 496, 7. It was there resolved, that the limitation might take effect two ways. 1st. If T. dies leaving issue male, then the estate to the second son takes effect, as a remainder expectant, which may be barred ; — Or 2dly, Suppose the other alternative, (which really happened,) that T. has no son; then it is an executory devise to the second son, if T. at his death left no issue male. Ib. 490.
In 2 Vez. 289, 2 Fearne 390, another strong instance occurred, where it was held, that a devise may operate either way according to the event. Doug. 491. If he dies without issue before 21, then over, by way of executory devise ; if he dies without issue after 2r, when the estate vested in him, it would go by way of remainder; because he had made his original devise capable of a remainder, in which case the court will always construe it a remainder. In this case, Lord Hardwicke considered and as used for or, upon the apparent intent of the testator. The question directed by the Lord Chancellor, to be made for the opinion of B. R. was, whether the limitation to the plaintiff was good in the events which had happened. 7 Term Rep. 101.
I will now proceed to apply these rules to the case before us, recurring occasionally to the will.
The testator devises the land in question to his son Francis, *242 [*243 his heirs and assigns for ever, subject to the payment of 2300I. by instalments to the testator’s son Peter, the last 50I. of which is payable in 1810. These words would give the fee to Francis most clearly, were there no other words in the will to controul them. If Francis had a fee, the plaintiff is entitled to recover, as the lessor of the plaintiff is his heir at law, being his sister of the whole blood, and the defendant being the brother of Francis of the half blood only. This rule of excluding the half blood from inheriting lands, is peculiar to England, and was introduced in rude and unlettered ages, rather as a rule of evidence than of descent. There is no reason for adhering to it now, even there, when the title can be so easily deduced and traced from the first purchaser through the whole and half blood. 2 Black. 228. If there be no reason now for adhering to it in England, every man of common understanding must be surprised, that it is still a rule of property among us, who can with so much more ease, *deduce our titles from the first purchaser. However, as our legislature, although they had the point lately under consideration, have only altered the rule so far, that if the intestate have no brothers or sisters of the whole blood or their representatives, the brothers and sisters of the half blood shall inherit his real estate, under the very proper exceptions mentioned in the act of 4th April x 797, the rule excluding the half blood is still in force, as to the case before us.
The next clause in the will, is in these words : “ but in case “my son Francis shall die under the lawful age of 21 years, or “ without lawful issue, then and in that case, I give and bequeath “my said son Francis’s share in my said whole estate, unto my “ said son Peter, his heirs and assigns for ever; and in case my “ said son Peter shall die under the lawful age of 21 years, or “without lawful issue as aforesaid, then and in that case, I give “ and bequeath my said son Peter’s share in my said whole estate “unto my said son Francis, his heirs and assigns for ever; but “in either case, the survivor of my said two sons Francis and “ Peter shall then pay unto my daughter Elizabeth or her heirs, “the sum of 500I., but to be taken out of the last payments of “my first mentioned plantation.”
The testator gives to Francis a large, and to Peter a considerable personal estate, and after the death of his wife, gives them the further sum of 600I. to be divided between them; and then the house in which she lived, to them in joint-tenancy.
He gives to his daughter, the lessor of the plaintiff, ioool. including what he had before given to her and her husband, viz. 300I. besides what he had so given in six months after his decease, and iool. per annum, till the whole should be paid; and he empowers his executors to sell a plantation of about 80 acres, and the money to go towards the payment of the said 1 oool.
The law is clear, that where land is given to a man and his heirs, and in case he dies under 21, or without issue, the word *243 or must be construed and, for the reason before stated. Were there no other words in this will, what evidence have we that the testator had in his mind a belief that Francis might marry and have a child before he arrived at the age of 21 years, and that therefore it was his intention to make provision for that event ? When the will was made, Francis was 20 years and 8 days old. It was fairly inferred in the argument, that testators must be presumed to confine their provisions to such events as are probable, and not without some circumstances, are they presumed to extend provisions for events which are not probable, but merely possible.
* -, *In 2 Fearne 333, the words were general and compre-44-l hensive, extending in point of expression as well to his sons by any future wife, as to those by his present wife, in which case, the devise would have been void; but as he gave his wife specific legacies, and made her one of his executors, it was held that he could not have sons by a future wife in view, and therefore the devise could not extend to them.
We are not however, to be guided by inferences and probabilities only. We have sure guides in the words of this will.
I cannot agree to the position of the defendant’s counsel, that the word then would of itself, be an adverb of time, confining Francis’s dying without issue, to issue living at his death. I understand the law on this point thus : then is an adverb of time, when it refers to a thing or event, which must .necessarily happen ; but not when the event is contingent. 2 Wms. 393, in note. 3 Co. 21, a. If it be contingent, then is a word of reference, and relates to the determination of the first limitation in the estate, when the contingency arises. 2 Atlcy. 311.
Nor do I think, that the next additional words “and in that case ” would without more, make then an adverb of time. But when the testator goes further and says, that in either case “the “survivor of my said two sons Francis and Peter shall then “pay unto my said daughter Elizabeth or her heirs 500I. but “out of the last payments,” &c., can there be a doubt of what he had in view, or of his intention ? He directs Francis or Peter personally by name, as the one or the other should be the survivor, to do an act, to pay the 500I. To whom? It is not confined to Elizabeth personally ; but to her or her heirs ; and why direct that the 500I. should be out of the last payments of his plantation ? Because the testator’s idea was, that the event was likely to happen before April 1810. Requiring the survivor by name to do an act on the death of the other without issue, clearly confines the dying without issue, to issue living at his death. This is not a small circumstance, but is as strong language as a man not learned in the law could use, to take this out of the rule laid down in Forth v. Chapman, and so often repeated since. It is as strong, as if the testator had said, if Francis should die, living Peter, which is Pells v. Brown’s case.
The words used here are surely as strong as, leaving no issue *244 behind him, then to B., which were held to make a good executory devise, as before stated in 3 Term Rep. 143. The words in that will, conveyed the testator’s idea, that the event was likely to happen in the life time of his widow, or of his son, or of his daughters. Here the testator’s idea is equally conveyed, *that the survivor should have the land on the death of his brother, without issue living at his death. Should it [*245 be contended that in the case last cited stress was laid on the words behind him, I answer that these words are not in the next subsequent case in 7 Term Rep. 589, in which there was a similar construction.
Then as the clear intention of the testator is expressed in_this will, as the words dying without issue as explained by the subsequent words, must mean the same thing as if he had said, dying without issue living Peter, must or be construed and to effect the intention of the testator, in the event which has happened ? For unless it be necessary so to construe this word, it must retain its grammatical sense. Had Francis died under 21, but had left issue, we must have construed or as if he had written and in the place, in order that the land should descend to his issue agreeably to the intention of the testator. But that event did not happen. Are we not therefore on the authority of the cases, which I have cited from Talb. Cas. 43, Doug. 490, 2 Vez. 249, 2 Fearne 190, 3 Bro. Ch. Rep. 85, equally warranted and compelled, in the event which has happened to adhere to the literal meaning of the word or ? This will make it an ex-ecutory devise to Peter the survivor, on which he is to pay Elizabeth 500l. in addition to the xoool. devised to her before, and will give complete effect to the intention of the testator.
But it is said, this cannot be the proper construction, because as Francis arrived at the age of 21, he might have devised it, and that the restriction to sell, did not prevent the estate from descending.
To the first remark, I shall only answer at present, that this is begging the question. I shall give it a full answer, when I come to consider the codicil, in which the restriction is inserted. To the second, I answer, that it would indeed have descended to the issue of Francis, agreeably to the plain intention of the testator; but that it would have descended to the collateral heirs, is the very question in dispute.
I now proceed to consider the other part of the will, the codicil. Does it weaken or add force to the plaintiff’s title, or to that of the defendant ? The words in the codicil, material to the case before us, are these, viz.: “ And I do hereby order, “particularly request, and do not allow my said son Francis to “sell any part of the land, (which I have in my said will given “ him) until he arrives at the age of 30 years, and then he may “do with the same as he pleases.” Here the word then is an abverb of time, according to the distinction, which I have stated,
*246 *It is said, that the words of this codicil warrant the construction contended for on the part of the plaintiff, by saying -“the land which I have in my said will given him.”
I answer, he had indeed given him the land, but he had given it to him sub modo.
Again, it is contended, that by prohibiting Francis from selling the land until he should arrive at the age of 30 years, the testator conveys'his idea, that he had given him such an estate as he could sell, after he attained the age of 21.
I answer 1st, the testator’s belief, that he had given him such an estate, cannot alter the nature of the estate, which the words of the will convey, independent of that belief. But 2dly, supposing that by the words of the will, without the codicil, such an estate as he could sell or devise, and that it would descend after his arrival at the age of 21 years, the prohibition in the codicil is inserted for the express purpose of altering the nature of that estate. The words “ and I do hereby .order, and par- “ ticularly request, and do not allow Francis to sell the land till “ he arrives at the age of 30 years," either have no meaning at all, no legal operation, and must be wholly rejected, or they are substantially and to all intents and purposes, a substitution of 30 instead of 21 years, as applied to the devise. The testator declares, that when Francis arrives at the age of 30, he may do with the land as he pleases. These words must imply, that before 30 he could not do with the land as he pleased, and therefore would not devise it, as was contended. I may add, that to contend that he might devise it, does not do justice to the memory of the testator, who throughout his will proves himself to be the affectionate parent to all his offspring. He shares his bounty among them in proportions well adapted to their relative circumstances, and to the eventual death of either son without leaving issue behind him, living at his death, giving in that event the further sum of 500I. to his daughter. Each of the survivors is to receive a further proof of his bounty; but'if Francis could have devised it and had devised it, he might have completely defeated this evident intention of the testator; a harsh construction, which would have required words different from those in this will to warrant it.
Again; the estate was burthened with from between 1500l. and 16501., payable before Francis arrived at 30 years of age. It was asked, had Francis paid this sum to Peter, and died between 29 and 30 years of age without issue then living, was Peter, after having received this money, to have the land also ? The question made a strong impression on my mind ; it being impossible to believe that this could be the intention of the testator, who shews himself throughout his will, equally *247] just and affectionate to all, and to each of his children. I am clearly and decidedly of opinion, that on such payment, the fee would have vested in Francis. He might have devised it, but not having done so, the plaintiff in such case would be *247 entitled to recover. This point is relied on by the plaintiff’s counsel as conclusive. It would be so, unless a conclusive answer could be given to it, which is simply this : the event did not happen; not a cent was paid, or payable, at the death of Francis.
M. seized of lands in fee, of the value of 110l. a year, devised them to his sister M. F. for life; remainder to S. F. the daughter of M. F., paying to each of her sisters C. and D. 500l.; if either of them die, the survivor to have the legacy; if S. F. die, the land to be divided between the survivors, and in case all the three daughters die before their mother, then to the heirs of M. F. forever. Held, that C. and D. are each entitled to a moiety of the land in fee, on the contingency of surviving their mother M. F., and of their sister S. F., dying before she paid their legacies. Willes 138. Here S. F. died before her mother without issue.- Had she outlived her mother, she would have taken the fee simple by this devise. The money which she is directed to pay, being near ten times the annual value of the estate, and the subsequent words, “if she die the land to go to her sisters,” must be intended to mean, if she die before she has paid the legacies. It would be absurd to say, that if she had lived to pay her sisters their legacies, and thereby become a purchaser of the estate, yet that she should only have it for life. Ib. 142.
I have already stated, that of late years, executory devises have resembled contingent remainders, in all other respects, only they have been put under the restraints before specified, to prevent perpetuities. Here the testator has rendered a perpetuity impossible ; he has confined the contingency to less than ten years, after the making his.will. And this circumstance alone, independent of all others, is a decisive answer to the questions on this point.
I have often thought, that a rule adopted in the construction of statutes, would in many instances give considerable assistance, if applied to discover the intention of a testator, and suppose he was present and was asked the question, what was your intention in the instance or event about which the dispute is ? We will be generally safe, in giving a construction to his will, according to the answer, which he being an upright and reasonable man would give, if it be not contrary to any rule of law.
The question was asked during the argument; it was answered by another question ; and it was contended, that the rule *did not apply to the construction of wills. I have however met with two instances, in which it has been applied [*248 by eminent judges. By Eyre, C. J. who observes, if it had been asked the testator, when he was making the disposition, what interest he meant, such son being in ventre sa mere, &c. should have ? I think he would have said, that such son should take a fee, &c. Bos. and Pull. 246-7. So by Wilmot, C. J. The court must put themselves in the place of the testator, and determine *248 as he would have done. 2 Wils. 323. If he had been asked, &c. he certainly would have answered, &c. Ib.
We would therefore be warranted in calling this rule to our assistance, were any assistance necessary to enable us to discover the intention of the testator expressed in this will. We may suppose the testator present, and that he is asked, how he intends his lands shall go, if his son Francis reaches 21, but dies a few months afterwards, unmarried and without issue ? The manner of his' death is entirely out of the question. We may well suppose, that if he was a man of plain sense but sound reason and understanding, he would smile at the question, and tell us, he had provided for that event, by as strong words as he knew how to use. He is told, that strong as his words are, legal ingenuity, by blending where there is little or no similitude, and distinguishing where there is no difference, may raise doubts, whether the words which he has used be sufficient to carry his intention into effect; because decisions upon other words, somewhat like those in question, in other wills (though indeed the whole context of those other wills was not like that in the present) have defeated the intentions of testators, because there are technical terms, or magical words (not indeed understood by one testator in ten thousand) by the improper use whereof, or by using words in a sense in which they are clearly understood in every other instance, except in the construction of wills, the intentions of not a few testators have been defeated. Peter Shitz the elder, would no doubt reply, that his friends could not be serious ; that when he served on juries, he had often heard lawyers and judges say, that law is the perfection of reason, and the better it is understood the more it is praised ; that old people frequently attempted to have their land kept for many ages, nay, forever, in their own families; but the law shewed its wisdom in saying this could not be done, because it would prevent property from answering the purposes of society, if it could not be sold when the interest of the owner requires a sale; and that he had completely guarded against this objection, in confining the restriction to the lives of his two sons, declaring, that on the death of one of them without issue, the *land should go to the other, whom he directed by name *249] thereupon to pay his sister 500I. However in consequence of the suggestions of his friends, who never trifled with him, in two days after the will, he makes the codicil, to remove, as he believes, every possibility of doubt. When this is done, he dies in peace, and in perfect confidence, that in the event' stated, his land would go to his younger son, and that 500I. in addition to the first lega’cy would be secured (out of the power of his elder son to defeat, if he died without issue under 30 years of age,) to his daughter and to her children.
Another circumstance deserves notice. In England, in cases of intestacy, (and .wills are generally made more or less in cor-respondency to the rules of intestacy,) the real estate goes into *249 one channel, and the personal estate into another. With us, they flow in the same channel. Testators have the laws of their country in cases of intestacy, in their view, when they make their wills. Therefore in all cases not perfectly clear, the laws of intestacy ought to have great weight in the construction of wills.
Referred to in 7 W. & S. 98; 64 Pa. 14.
Again. In England, estates of inheritance are vested in a very few individuals indeed, comparatively speaking. Most of the owners are in the upper walks in life. Many of them are, and most of them ought to be, in some degree acquainted with the laws of their country. Most persons in their stations, make their wills deliberately, before they have any apprehension of danger of an early death, and few of them are without the assistance of counsel; all of them may readily obtain such assistance. 1 Fearne 260. The case is widely different indeed in Pennsylvania. Happily among us, a great majority of our farmers are landholders. We well know, that very few of them make their wills, until their last sickness. In very many instances, legal assistance could not be obtained in time; neither do persons in their station in life, know that it is necessary. With only plain common sense for their guide, every man thinks that it is a very simple thing to declare who shall enjoy his property after his decease. If in England, the law relating to the construction of wills, as well as in other instances, be daily melting into common sense, more and more disentangled from the feudal fetters which too long continued to enchain the understanding; if form gives way to substance, and justice be no longer entangled in a net of law, it would ill become us, to let a feudal drag-chain defeat the intention of a testator, expressed with sufficient clearness and certainty in his will. That intention however, cannot be carried into effect, if it be contrary to any clear and settled rule of law, or any decision on the very point, in every circum*stance which has become a rule and land-mark of property. For it is better, that the intentions [*250 of many testators should be defeated, than that the rules and land-marks of property should be rendered precarious.
I have shewn, that the intention of the testator in the present instance, is expressed with clearness in his will, that it is not contrary to any such rule or decision, and therefore it must prevail, and judgment must be rendered for the defendant.
Brackenridge J. concurred.
Judgment for the defendant.
A writ of error was afterwards brought to the High Court of Errors and Appeals ; and the judgment reversed July 25 1807. 2 Binn. 532.