# Brock *v.* Pennsylvania Steel Company, Appellant.

| 203 | 249 |
| Case 2 | |
| f 203 | 255 |
| f 203 | 256 |

*Orphans' court sale—Trust and trustees—Act of April 18, 1853, P. L. 503.*

The orphans' court has jurisdiction under the Act of April 18, 1853, P. L. 503, to order the sale of an iron ore mine held by trustees under a testamentary trust, where it appears that the mine is diminishing in value under present conditions with a comparative unproductiveness in the not remote future, and that the sale is for the interest and advantage of all interested in the property; and this is the case, although the testator forbade his trustees to sell more than one fifth of his mining estate.

*Orphans' court sale—Decree.*

A decree of the orphans' court directing a sale is a conclusive adjudication of everything necessarily considered and determined in reaching the conclusion.   It is not essential to its validity that there should be a

formal finding of the facts, which are the ,basis of it, although it is the better practice to do so.

Argued May 8, 1902. Appeal, No. 132, Jan. T., 1903, by defendant, from decree of C. P. Lebanon Co., Equity Docket, 1902, No. 1, on bill in equity in case of Horace Brock et al., Trustees under the will of G. Dawson Coleman, Deceased, v. Pennsylvania Steel Company. Before McCollum, C. J., Mitchell, Dean, Mestrezat and Potter, JJ. Affirmed.

Bill in equity for specific performance. Before Erhgood, P. J.

From the record it appeared that G. Dawson Coleman, being the owner in fee of the undivided fifteen ninety-sixths parts or shares in the Cornwall ore banks and mine hills situated in Lebanon county, Pennsylvania, died testate in the year 1878. By his last will and testament, duly proven, he provided with reference to the said fifteen parts or shares as follows, viz:

" 1. I desire to preserve undivided during the lifetime of my children my entire mining estate, rights and interests, so that if all other means of support shall for any cause fail them, a comfortable livelihood may always be afforded to them therefrom. I therefore give and devise all my undivided fifteen ninety-sixth parts," and also all the rights and interests to which he was entitled to ores of any kind, base or precious, upon the Cornwall estate to his wife, Debbie Brown Coleman, and his son-in-law, Horace Brock, trustees, or the survivor of them, in trust during the lifetime of his children and the survivor of them. Particular directions were given as to the manner of the payment and investment of the income or proceeds of said trust estate during and after the minority of his children, until the termination of the trust by the death of the last surviving child. After the death of the last surviving child the trust was to terminate with remainder over in fee " to the same persons and in the same proportions as the said net proceeds thereof would then be payable in accordance with the trusts hereinbefore declared, and the said trusts shall thereupon wholly cease and determine."

By another clause in his will he further provided with reference to said shares as follows, viz:

" 6. If the said trustees shall at any time during the continuance of their trust consider it advisable to sell a portion of said mining estate, rights and interests hereinbefore devised to them in trust, I hereby empower them to make sale of a portion of said mining estate, rights and interests (not exceeding however one fifth part of my estate therein), to any person or body corporate owning or agreeing to erect works for the consumption of ore to be taken therefrom. The proceeds of such sale shall be invested by the said trustees and held by them upon the same trusts as those set forth in the first paragraph of my will."

In the year 1901 the trustees of G. Dawson Coleman, deceased, contracted with the said steel company, a corporation owning and operating a large number of furnaces and iron and steel manufacturing mills, to petition the orphans' court of Lebanon county, where said real estate was located, for authority to sell said fifteen ninety-sixth parts or shares for the sum of $2,025,000, and upon such order being granted to convey the same to said company in fee simple, free and clear of all trusts, at the price stated; by the terms of which contract said steel company agreed, upon tender to them of a deed of conveyance such as would vest in it said interests in fee simple by a good and marketable title, free and clear of all trusts, to accept said deed and to pay said trustees said purchase money. Thereupon a petition was presented by said trustees for the order or decree and authority above referred to, and alleging, inter alia, the desirability of accepting the said steel company's offer, the acquiescence by all parties interested, and the necessity of appointing guardians ad litem of such of them as were minors.

On June 29, 1901, said court authorized the sale and decreed a conveyance.

After the entry of the decree and security the trustees executed and tendered a deed of conveyance of said fifteen parts or shares to the steel company in fee simple, and demanded the acceptance thereof and the payment of the purchase money. The steel company refused to accept the conveyance and to pay the purchase money because, as it alleged, said decree and conveyance would not vest in it a good and marketable

title to such shares free and clear of the trust declared in said decedent's will.

The trustees therefore filed their bill for specific performance.

The court entered a decree directing the defendant to accept the conveyance.

*Error assigned* was the order of the court.

*H. C. Shirk,* with him *W. F. Darby* and *Wayne MacVeagh,* for appellant.—The will of G. Dawson Coleman is the law of his estate and this trust, and this law in unmistakable terms confers upon his interest in the Cornwell ore bank and mine hills immunity and exemption from sale or alienation during the lives of his children and the survivor of them. The controlling thought of the testator seems to have been to keep his interest together and unsold. The prohibition against division or alienation is directed against and imposed upon the interest itself, which is to be kept sacredly intact. The purpose of the act of 1853 undoubtedly is to unfetter estates and make them freely alienable in cases where it is to the manifest advantage of the estate and not prejudicial to the purpose for which it is held, but the legislature has not yet enacted, nor have the courts decreed, that the owner of real estate cannot restrict its alienation by a reasonable provision for a limited period of time.

*John G. Johnson,* for appellee.—The act of 1853 (known as the price act) allows every trustee, clothed with a legal title, after notice to all parties interested, upon order of a court having jurisdiction of the realty, to make conveyance of the same in fee simple, if the court shall be of the opinion that by such conveyance the interest of the trust estate will be promoted: Burton's App., 57 Pa. 213; Church's Petition, 139 Pa. 67; Home's App., 162 Pa. 232; Nauman v. Weidman, 182 Pa. 266; Heffner's App., 119 Pa. 462; Freeman's Est., 181 Pa. 405; Barr v. Weld, 24 Pa. 84; Stanley v. Colt, 5 Wallace, 119; Sohier v. Trinity Church, 109 Mass. 7.

The power to make a conveyance under the circumstances stated in the first proposition cannot be defeated by directions in the will restricting the selling.

The will of G. Dawson Coleman imposed no restriction upon

the selling, but if it did it was for the benefit of those who are sui juris and who could waive, and who have waived, such benefit.

OPINION BY MR. JUSTICE MITCHELL, June 4, 1902:

Certain technical objections are made to the proceedings and decree because there is no distinct finding that the property could be sold " without injury or prejudice to any trust, charity or purpose " for which it was held under the will, and no such finding that it could be sold " without the violation of any law conferring an immunity or exemption from sale or alienation." These objections are probably made from superabundant caution. The jurisdictional facts appear in the record. The petition sets forth, inter alia, that a large element of value in the ownership of the interest in the property is in the right to take ore for furnaces at " proprietors' prices " and that this element is enjoyed only indirectly through furnaces operated under the will of Debbie Brown Coleman, and will cease upon the sale of those furnaces; further that by changes in ownership the petitioners are likely to lose control of the price of the ore; that differences in the modes of business have greatly diminished the power of petitioners in the direction of the mining and sale of ore; and lastly the prospective exhaustion of the ore banks before the coming of the remainders into possession. The decree recites that " this decree is made because the court finds that it is to the interest and advantage of all interested in the property described in the petition, both the life tenants and the remainder men, that said property shall be sold for the price in the petition set forth . . . . and further because the facts presented by the petition disclose conditions which in the opinion of the court would place the property in jeopardy unless such action be authorized."

It would be better practice, inasmuch as the matter of title must always continue to be important, that there should be a separate and formal finding of the essential facts as the basis, though not necessarily recited in the decree itself. But it is not essential. The facts appearing in the petition and answer, the decree like a verdict is a conclusive adjudication of everything necessarily considered and determined in reaching the conclusion.

On the substantial question of the jurisdiction of the court, the case is clearly within the provisions of the act of April 18, 1853, P. L. 503. It is a case of diminishing value under present conditions with a comparative unproductiveness in the not remote future, which the court expressly finds " would place the property in jeopardy unless such action be authorized." The court therefore finds that the sale is for " the interest and advantage of all interested in the property." No " trust, charity or purpose " involved, nor any interests, present or future, are intended to be affected further than by the substitution of the purchase money for the land, and the holding of the former for " the use and benefit of the same persons for life and in remainder and for the same estates and interests, present and future, past, contingent and executory, as the real estate sold has been held."

The decree does not violate any law conferring immunity or exemption from sale or alienation. The prohibition of sale here does not arise from any statute, from the nature of the property or of the trust upon which it is held, nor from any inherent limitation in the power of the trustees, but rests,.so far as it exists at all, on the directions of the testator. But every testator makes his will in subordination to the law of the land. If he should, no matter how positively, attach a prohibition of alienation to an estate in fee, it is set aside without hesitation. So with the act of 1853. Besides its enforcement of public policy as to the unfettering of land, it is intended to meet changed conditions which work against the testator's principal intent. The courts are given power to preserve that, even to the extent of setting aside the means which he prescribed for securing it. Testator in the present case created an express trust to.continue during the life of his widow, and until the death of the survivor of his children, and set forth his purpose in so doing, " to preserve undivided during the lifetime of my children, my entire mining estate, rights and interests, so that if all other means of support shall for any cause fail, then a comfortable livelihood may always be afforded to them therefrom." He further gave his trustees a power of sale over his mining estate etc., " not to exceed, however, one fifth part of my estate therein." It was in his contemplation that changed circumstances might require a change

of the estate, and within the limit of one fifth he authorized it in the discretion of the trustees. Whether the power of the court to authorize a further change by sale was present to his mind does not appear. He did not expressly prohibit it and the prohibition would have been ineffectual if he had. The power was there under the law and he could not prevent its exercise if the legal conditions should arise. They did arise, and the court in ordering the sale was not only within its legal powers, but was in fact aiding the testator's expressed purpose to secure "a comfortable livelihood" to his beneficiaries from that portion of his estate.

Decree affirmed.

*Orphans' court sale — Trust and trustees — Act of April* 18, 1853, *P. L.* 503.

