ACCIDENT FUND, a Legal Entity Authorized by the Michigan Legislature Pursuant to 1912 PA10 (First Extra Session) Part V, Sec. 1; 1915 CL 5477, Ward Ellison and Max Grost, individually, Elston-Richards Storage Company and Russell Jameson, individually, Plaintiffs,

v.

Nancy A. BAERWALDT, Commissioner of Insurance of the State of Michigan; Silveria O. Kanoyton, Personnel Director of the State of Michigan; John Heueni, Director of the Department of Licensing and Regulation of the State of Michigan; Loren Monroe, Treasurer of the State of Michigan; Gerald Miller, Director of Management and Budget of the State of Michigan, and Michigan Civil Service Commission, Defendants.

No. G 81–224.

United States District Court, W.D. Michigan, S.D.

Feb. 2, 1984.

See also, D.C., 579 F.Supp. 724.

Theodore Swift, David C. Coey, Frank J. Nerat, Jr., Lansing, Mich., for plaintiffs.

Harry G. Iwasko, Jr., Philip J. Smith, Robert Ianni, Asst. Attys. Gen., Lansing, Mich., for defendants.

## OPINION ON ABSTENTION

ENSLEN, District Judge.

The creation of Plaintiff Accident Fund was authorized by state statute in 1912 as an alternative form of worker's compensation insurance for employers in the State of Michigan. The Fund was to be administered by the State Insurance Commissioner, who was responsible for levying, collecting, and disbursing premiums and dividends for the Fund, employing deputies, assistants, and clerical help (as authorized by the Board of State Auditors) necessary to administer the monies of the Fund, and terminating the employment of any employee of the Fund. Monies collected by the Fund, which was to be "neither more nor less than self-supporting", were to be held in the State treasury. A civil action in the name of the State as Plaintiff could be maintained to collect unpaid contributions, premiums, or assessments levied by the

Commissioner, and to compel an employer to allow inspection by the Commissioner of its books, records, and payrolls. Neither the Commissioner nor the State of Michigan was to become liable for payment of compensation claims beyond the extent of collected Accident Fund monies. 1912 P.A. 10 (First Extra Session), Part V, §§ 1–9. This statutory framework, with a few minor permutations, has existed up to and including the present enabling legislation. M.C.L.A. § 418.701 *et seq.;* M.S.A. § 17.-237(701) *et seq.*[1]

It appears that the Accident Fund has operated effectively since its inception. Plaintiffs contend this operation has been as an independent entity, with little or no involvement by the Insurance Commissioner. In 1977, however, in response to a 1976 Michigan Attorney General decision opining the Fund to be an agency of the State subject to the constitutional and statutory regulations applicable to all state agencies, *Opinion of Attorney General No. 5147* (December 7, 1976), the Commissioner issued directives designed to, *inter alia,* integrate the Fund and its employees into the state civil service and retirement systems, and place the Commissioner in a position of management control. The Fund objected to these directives by letter, and requested a hearing before the Commissioner, which was denied. The instant lawsuit ensued.

Seeking injunctive and declaratory relief, Plaintiffs allege the deprivation under color of state law of their rights, privileges, and immunities under the United States Consti-tution and federal statutes; specifically the Impairment of Contracts Clause of Article 1, Section 10 of the United States Constitution, the Due Process and Just Compensation Clauses of the Fifth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, 42 U.S.C. § 1983, and the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 *et seq*).[2] Pivotal to a resolution of these claims is a determination as to whether the Accident Fund is an agency or instrumentality of the State of Michigan, a question never addressed by the Michigan courts. This determination will be made by reference to Michigan statutes, legislative history, Attorney General Opinions, and any Michigan case law analogously relevant. Believing this matter to be one which should be resolved in the state courts, I have decided to exercise my discretion and refrain from consideration of this lawsuit on grounds of abstention.[3]

As stated by the United States Supreme Court:

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate the controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to

---

1. Noteworthy are M.C.L.A. § 418.701; M.S.A. § 17.237(701), which provides that the Accident Fund is to be supervised by the Commissioner of Insurance, and that the Commissioner is to promulgate rules regulating the qualifications of employers wishing to become employer-members; M.C.L.A. § 418.741; M.S.A. § 17.237(741), providing that the Fund's "Advisory Board" (consisting of employer-members certified by the governor to serve one-year terms for the purpose of advising the Commissioner regarding the administration of the Fund) is to authorize the employees selected by the Insurance Commissioner; and M.C.L.A. § 418.751; M.S.A. § 17.237(751), which authorizes the Commissioner to make the final judgment as to whether it is "necessary to dissolve the Accident Fund".

2. The Complaint was brought by the Accident Fund, named employees, and named member-insureds. By Consent Judgment filed January 9, 1984, the due process and just compensation claims of the Fund, Elston-Richards Storage Company, and Russell Jameson, only, have been resolved. All other constitutional claims remain.

3. An oral Opinion abstaining from consideration of this lawsuit was delivered from the Bench on January 9, 1984. A Judgment Order of Dismissal was entered on January 24, 1984. This Opinion follows.

repair to the State court would clearly serve an important countervailing interest." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975)—quoting from *County of Allegheny v. Frank Mashuda Company*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959).

There are three general categories of circumstances appropriate for exercise of the doctrine of abstention, with the Supreme Court recognizing a fourth with apparent approval. Only two of these categories are of interest to the instant action.[4]

The oldest form of abstention was recognized by the Supreme Court in *Railroad Commission v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). There, the court held that abstention may be appropriate where a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent, and ambiguous, state law. The case involved an order issued by the Texas Railroad Commission requiring Pullman conductors to operate sleeping cars on state railroad lines. The order was challenged on grounds that it was unauthorized by Texas law as well as violative of the Equal Protection, Due Process, and Commerce Clauses of the United States Constitution. Recognizing that a determination that there was no authority in state law for the Commission's order would end the litigation without the constitutional issue having arisen, the court remanded the cause to the district court with directions to retain the case, but to abstain pending a state court determination of the state law question. In reaching this deci-

sion, the court relied upon notions of comity, stating in part:

> The last word on the meaning of Article 6445 of the Texas Civil Statutes, and therefore the last word on the statutory authority of the Railroad Commission in this case, belongs neither to us nor to the district court but to the Supreme Court of Texas.... Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, ... [Case law reflects] a doctrine of abstention appropriate to our federal system whereby the federal courts, "exercising a wise discretion," restrain their authority because of "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary. *Id.* at 312 U.S. 499–501, 61 S.Ct. 644–646 (citations omitted).

*See also, Colorado River, supra* at 424 U.S. 814, 96 S.Ct. 1244; *County of Allegheny, supra* at 360 U.S. 189, 79 S.Ct. 1063; *United States v. Anderson County, Tennessee*, 705 F.2d 184 (CA 6 1983); *Ada-Cascade Watch Company v. Cascade Resource Recovery*, 720 F.2d 897, 902 (CA 6 1983), and cases cited therein.

■ The instant action fits squarely within the letter and spirit of the *Pullman* doctrine. Although Plaintiffs have phrased much of their cause of action in federal constitutional terms, the threshold question is whether the Accident Fund is a state agency or instrumentality; a question of state law interpretation. State law on this issue, as Plaintiffs freely admit, is ambiguous. Furthermore, since the propriety, and thus the constitutionality, of the directives issued by the Insurance Commissioner de-

---

4. The so-called *"Younger"* doctrine involves abstention in cases wherein a party seeks to restrain pending state criminal proceedings. The category has been extended to involve pending state nuisance proceedings antecedent to a criminal prosecution, and pending state proceedings for the collection of state taxes. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See also, Colorado River, supra* at 424 U.S. 816, 96 S.Ct. 1245, and cases cited therein.

The "fourth" form of abstention, recognized only informally by the Supreme Court, involves cases where there is a contemporaneous action pending in state or federal court; dismissal being justified on grounds of "wise judicial administration". *See Colorado River, supra* at 424 U.S. 817–818, 96 S.Ct. 1246–1247.

Since the instant case does not involve a pending state or federal court action fitting within the parameters of these doctrines, abstention on either ground would be inappropriate.

pends upon a determination as to the state agency or instrumentality status of the Fund, the requisite federal constitutional claims which might be mooted or presented in a different posture by a state court determination of pertinent state law are present. Being mindful of the rightful independence of the State of Michigan in regulating its insurance industry, and in an effort to avoid needless friction with state policies in that regard, I am exercising my discretion and abstaining on *Pullman* grounds from consideration of Plaintiffs' constitutional claims.

However, the *Pullman* doctrine is not the sole basis for my decision to abstain. An additional category of abstention, recognized by the Supreme Court in *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is equally applicable herein.

*Burford* involved an attack upon the validity of an order of the Texas Railroad Commission granting petitioner a permit to drill several oil wells. Jurisdiction was invoked on diversity and federal question grounds, the federal question being a constitutional due process challenge to the order. The court, after recognizing that abstention may be appropriate both in cases of diversity and federal question jurisdiction, held that the federal court should have abstained from the case on the ground that the issues involved concerned a specialized aspect of a complicated regulatory system of local law, which should have been resolved by specialized local administrative bodies and courts.[5]

▉▉▉ As in *Pullman*, abstention under the *Burford* rationale involves principles of comity. *See County of Allegheny, supra* at 360 U.S. 189, 79 S.Ct. 1063. Abstention is deemed appropriate in cases involving "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the re-

sult in the case" at bar. It is sometimes considered sufficient that the exercise of federal review of a state law question in a particular case and in similar cases would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River, supra* at 424 US 814, 96 S.Ct. 1244. However, the mere possibility that resolution of a federal question may result in the overturning of a state policy, without more, is generally insufficient to justify abstention under *Burford*. *Ada-Cascade, supra* at 903; *Zablocki v. Redhail*, 434 U.S. 374, 380 fn. 5, 98 S.Ct. 673, 98 S.Ct. 673, 678, 54 L.Ed.2d 618 (1978). *See also, Construction Aggregates Corporation v. Rivera de Vicenty*, 573 F.2d 86 (CA 2 1978) for an interesting discussion of the history and policies behind *Burford*-type abstention.

The *Burford* doctrine was recently addressed in *Ada-Cascade, supra*, wherein the Sixth Circuit was asked to review this Court's grant of summary judgment for defendants in a dispute over the construction of a facility for the disposal of hazardous waste products. It was asserted that construction of the facility violated the Federal Resource Conservation and Recovery Act, 42 USC 6901 *et seq*, because the facility failed to obtain all necessary state environmental permits as required by the Act. A decision as to compliance with state environmental permit regulations was dispositive of the federal statutory issue. The Sixth Circuit, in a majority opinion relying on *Burford*, abstained from consideration of the issues presented on appeal, and remanded to this Court with instructions to dismiss on grounds of abstention.

In reaching this decision, the majority recognized that two factors must be present before abstention under *Burford* is appropriate: (1) "a complex state regulatory scheme which would be disrupted by federal court review", and (2) "a state-created forum with specialized competence in

5. Unlike the *Pullman*-type of abstention where the court merely stays proceedings pending a state court determination, abstention under the *Burford* doctrine results in dismissal of the action. *See, e.g., Nasser v. City of Homewood*, 671 F.2d 432 (CA 11 1982). Where abstention is justified on both *Pullman* and *Burford* grounds, the action should likewise be dismissed. Wright, Miller & Cooper, *Federal Practice and Procedure*, Vol. 17, § 4245.

the particular area." *Ada-Cascade, supra* at 903—citing *Burford, supra* at 319 U.S. 327, 332–333, 63 S.Ct. 1101–1102.

In addressing the first *Burford* factor, the majority found that the State of Michigan has an "overriding interest in the protection of its environment from the effects of unregulated waste", *Ada-Cascade, supra* at 904. The majority went on to briefly examine the permit approval process involved in the construction of hazardous waste facilities in Michigan, concluding that the state had developed a "complex and systematic" regulation process which enabled it to "implement a consistent and coherent state policy toward hazardous waste facilities in the state", and which would be disrupted by federal court review. *Ada-Cascade, supra* at 905. That a federal court was "ill-equipped to review state rules and regulations which have an entirely local effect", was an important consideration to the majority in reaching this conclusion. *Ada-Cascade, supra* at 906. Because the State of Michigan has centralized judicial review of its hazardous waste facility regulation process in the Ingham County Circuit Court, the *Ada-Cascade* majority also found the second *Burford* requirement of a specialized state-created forum to have been satisfied. *Ada-Cascade, supra* at 905.

Applying these principles to the instant case leads me to conclude that the factors necessary for appropriate exercise of *Burford*-type abstention are also present herein.

The State of Michigan has promulgated extensive legislation regulating the insurance industry in the state; the Insurance Code of 1956 in fact consisting of more than a full volume of the Michigan Statutes Annotated. M.C.L.A. § 500.100 *et seq;*

M.S.A. § 24.1100 *et seq.* The Code's statement of purpose makes specific reference to the Accident Fund. Moreover, the state's Worker's Disability Compensation Act contains numerous sections dealing exclusively with the operation and regulation of the Fund. M.C.L.A. § 418.611 *et seq;* M.S.A. § 17.237(611) *et seq.;* specifically M.C.L.A. § 418.701 *et seq,* M.S.A. § 17.237(701) *et seq.* There can be no doubt that these statutes comprise a complex regulatory scheme for the state's insurance industry, including worker's compensation and, specifically, the Accident Fund. The enactment of this regulatory scheme demonstrates the state's overriding interest in protecting its citizens from the effects of an unregulated insurance industry; a matter of substantial public concern. Through this legislation, the state is attempting to enforce a coherent and consistent state policy toward regulation of that industry.[6]

It is obvious that interference by this Court with efforts of the Insurance Commissioner and other state officials to discharge their supposed official duties, including regulation and supervision of the Accident Fund, would be disruptive of the state's efforts to enforce its policy toward regulating the insurance industry. Involved in this action are complex issues concerning the legal status of the Accident Fund, and the degree of authority over that entity intended by the legislature to be conferred upon the Insurance Commissioner. Questions as to rate setting, dividend payments, retirement benefits, employee status, and other management decisions hinge upon the resolution of those issues; issues which a federal court is ill-equipped to resolve. The potential ramifications of a ruling on those issues are great. Indeed, it is conceivable that the overall nature of the

---

**6.** Plaintiffs argue that the fact that the Michigan Supreme Court at one time refused to address certified questions from this Court regarding the state agency status of the Accident Fund indicates that the state law questions presented herein are not of particular public importance in the State. The extensive statutory regulation of the insurance industry, as well as the significant amount of publicity generated by this lawsuit, belie this argument. Moreover, the rea-

sons for the Supreme Court's refusal to address these questions, which are unknown to this Court and to the parties, may be many and varied. It certainly cannot be interpreted as an indication as to the public importance of the issues involved. The refusal of the certified questions has no relevance to the issue of whether this case should be decided by this Court, or should instead have been filed and resolved in state court.

worker's compensation insurance industry in the State of Michigan could be altered. This Court has been petitioned numerous times, during the course of these proceedings, to intercede in a variety of disputes between the Commissioner and the Fund. Moreover, there is at least one other federal action, and one state action, pending in Michigan involving the Accident Fund. These actions, and especially the instant action, represent a serious disruption of the regulatory scheme for the insurance industry established by the State of Michigan.

Had it not been for the Sixth Circuit's recent decision in *Ada-Cascade,* I may have concluded that the second *Burford* factor is not present in this case. The Insurance Code of Michigan provides, in relevant part:

> Any final order or decision made, issued, or executed by the commissioner under this insurance code shall be subject to review, after hearing had before the commissioner or a deputy commissioner without leave by the circuit court of Ingham County *or* the circuit court of the county in which the principal office in this state of the insurer aggrieved by such order or decision is located, or where the person resides against whom such order is directed. M.C.L.A. § 500.244; M.S.A. § 24.1244. (emphasis added).

Because this statute is phrased in the alternative, my initial reaction was that it did not fit within the parameters of a state-created forum with specialized competence in this particular area. However, comparison with the statute cited in *Ada-Cascade* reveals that the two are almost identical. The statute providing for judicial review of

decisions regarding hazardous waste management states that actions "may be brought in the circuit court for the County of Ingham *or* for the county in which the defendant is located, resides, or is doing business." M.C.L.A. § 299.548; M.S.A. § 13.30(48) (emphasis added). The Sixth Circuit, after expressly recognizing the alternative nature of this statute, found it to represent centralized judicial review in Ingham County Circuit Court. *Ada-Cascade, supra* at 905, fn. 5. The same must be said in the instant case since, although it is undisputed that a decision to abstain on *Burford* grounds is discretionary, I am bound by the Sixth Circuit's interpretation of this second factor. That the statute involved herein contains the word "shall" with regard to where an action is to be brought, while the statute in *Ada-Cascade* uses the word "may", strengthens my conclusion that the second *Burford* prerequisite is satisfied.[7]

Principles of comity, which have troubled me throughout my involvement in this action, convince me that abstention on *Burford* grounds is not only appropriate, but necessary. The Attorney General and Insurance Commissioner, whose actions ultimately led to the filing of this lawsuit, are officials of the State of Michigan. The legislature which promulgated the statutes creating and regulating the Accident Fund, and whose intent in doing so must be ascertained, is a creature of the State. Logic commands that the ultimate determination as to whether the Accident Fund is a state agency or instrumentality should be made in the state courts. Difficult state law questions are involved, in a matter of substantial concern to the people of Michi-

---

7. Noteworthy also are M.C.L.A. § 600.671; M.S.A. § 27A.671, which provides for review of an order of any state board, commission or agency in Ingham County Circuit Court; and M.C.L.A. § 418.751; M.S.A. § 17.237(751), which provides that disposition of the monies of the Accident Fund shall be under the direction of the Ingham County Circuit Court if the Fund is dissolved or the Chapter repealed. These statutes give further indication of the legislative intent that the Ingham County Circuit Court be a forum of specialized competence in this area.

I find no merit in Plaintiffs' argument that the fact that the Insurance Commissioner refused to grant them a hearing somehow takes this action outside of the second factor of *Burford.* Plaintiffs' remedy for that refusal was to seek review in Ingham County Circuit Court, under either M.C.L.A. § 500.244; M.S.A. § 24.1244, or the general provisions of M.C.L.A. § 600.671; M.S.A. § 27A.671. This action by the Commissioner is of no significance to the determination that there exists a specialized state-created forum.

gan. In an effort to avoid disruption of state efforts to formulate and act upon its laws and policies in this regard, I am abstaining from consideration of this lawsuit, in its entirety.[8]

Because I am exercising my discretionary power to abstain on both *Pullman* and *Burford* grounds, this cause of action is dismissed.

---

**8.** As noted in my January 24, 1984 Opinion Denying Injunction Pending Appeal, a very recent United States Supreme Court decision may lend support, at least in spirit, to my decision to abstain, and in fact may raise questions as to this Court's jurisdiction to consider this case. Although I am without the full text of the opinion, it appears that the court in *Pennhurst State School and Hospital v. Halderman,* — US ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) held, based upon the Eleventh Amendment, that a district court is without authority to order state officials to conform their conduct to state law (the 1966 Pennsylvania Mental Health and Men-

tal Retardation Act). As stated by Justice Powell for the majority: "It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." Since the instant action involves, in effect, allegations that state officials have not complied with state law (as it has been construed for many years), my decision to abstain would appear to parallel the *Pennhurst* majority reasoning.