**Michelle and Carlton AYERS, et al.**

v.

**PHILADELPHIA HOUSING AUTHORITY, et al.**

**Civ. A. No. 88–6262.**

United States District Court,
E.D. Pennsylvania.

June 27, 1989.

George Gould and Michael Donahue, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Susan F. May, Philadelphia Housing Authority, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DUBOIS, District Judge.

Presently before the Court are the Motion of the plaintiffs, Michelle Ayers, Carlton Ayers and Sadie Noland, for a Preliminary Injunction, and the Motion of the Defendants, Philadelphia Housing Authority, Mary Echols and Gregory A. Kern (hereinafter "PHA"), to Dismiss the Complaint. This action was instituted by the plaintiffs under 42 U.S.C. § 1983 as a proposed class action on behalf of all Turnkey III homebuyers in the City of Philadelphia. The plaintiffs allege that PHA violates the procedural due process rights of Turnkey III homebuyers by failing to provide notice required by Pennsylvania Act 6 (41 P.S. § 101 et seq.) and Pennsylvania Act 91 (35 P.S. § 1680.401c et seq.) and by proceeding against Turnkey III homebuyers in eviction actions commenced in Philadelphia Municipal Court.

Plaintiffs' Motion for a Preliminary Injunction will be denied. PHA's Motion to Dismiss will be granted and the Complaint will be dismissed without prejudice.

The facts may be summarized as follows:

The Turnkey III program is designed to provide homeownership opportunities for low income families. The program is funded by the United States Department of Housing and Urban Development (hereinafter "HUD") and is federally regulated; the regulations appear in the Federal Code at 24 C.F.R. § 904.101 et seq. The program is executed by a local housing authority ("LHA") which acquires or develops a low rent housing development with the financial assistance from HUD, owns the homes until title is transferred to the homebuyer, and is responsible for the management of the program.

The LHA administrating the Philadelphia Turnkey III developments is PHA. To be eligible for the program, low income families must meet certain income guidelines. These guidelines are established by the LHA and approved by HUD, and provide maximum and minimum income levels. Once the LHA determines that a family is income eligible, the family is placed on a waiting list. The priority the family receives is determined by the LHA in accordance with 24 C.F.R. § 904.104(c). After a family is accepted, but before the family may occupy a Turnkey III residence, the family must execute a Homeownership Opportunity Agreement ("HOA").[1]

The HOA is a contract between the occupant family (hereinafter "homebuyer") and the LHA. The HOA specifies the obligations of the homebuyer and many of the obligations of the LHA. Essentially, the homebuyer is required to make monthly payments to the LHA based on the homebuyer's income. These payments are first credited to the Earned Home Payments Account ("EHPA"). The EHPA is generated by the homebuyer's monthly payments for the purpose of purchasing the home. If the HOA is terminated, or if the homebuyer vacates the home, the homebuyer is entitled to receive the amount of the EHPA less any money owed to the LHA by the homebuyer.

If the monthly payment by the homebuyer exceeds the required EHPA contribution, the balance is credited to the homebuyer's Nonroutine Maintenance Reserve Account ("NRMR").[2] The purpose of the NRMR is to provide funds for the nonroutine maintenance of the home. This account covers infrequent and costly items of maintenance and replacement such as major heating and plumbing repairs, replacement of roof, repair or replacement of major appliances and the like. If the HOA is terminated, or if the homebuyer vacates the home, the homebuyer does not receive any balance in the NRMR, nor is the homebuyer required to pay any deficiency in that account. If the homebuyer purchases the home, the balance of the NRMR is paid to the homebuyer at settlement. Any defi-

---

1. The Homeownership Opportunity Agreement is printed in its entirety at 24 C.F.R. Pt. 904, Subpt. B, App. II.

2. If a balance from the monthly payment still remains after the contribution to the NRMR, the balance is credited to the operating expenses of the LHA.

cit in the NRMR account must be paid by the homebuyer at settlement.

The HOA also requires the homebuyer to be responsible for all routine maintenance of the home. Maintenance of common areas and nonroutine maintenance are not the responsibility of the homebuyer. There is a very limited right of survivorship specified at 24 C.F.R. § 904.107(1).

The Turnkey III program has been referred to as "the greatest innovation in public housing." *See* Catz, *Historical and Political Background of Federal Public Housing Programs*, 50 N.D.L.Rev. 25, 39 (1973). The unique characteristic of the program which earns it that title is that homebuyers in the program may actually purchase the home and become home-*owners*. The regulations provide two methods by which a homebuyer may purchase the home: First, the homebuyer may purchase the home when the EHPA and a portion of the NRMR designated by the homebuyer equals the purchase price and incidental costs as calculated by the LHA under the regulations. 24 C.F.R. § 904.113(c)(1). Second, the homebuyer may purchase the home if the EHPA and the designated portion of the NRMR are less than the purchase price and the incidental costs by obtaining financing or otherwise paying the difference. 24 C.F.R. § 904.113(c)(2).

PHA owns, operates and manages two Turnkey III developments in the City of Philadelphia, Brown Street Village and Whitman Park. These two developments have a total of 196 units. PHA has operated the Brown Street Village Turnkey III development since 1981 and the Whitman Park Turnkey III development since 1982. Families have resided in these developments since the PHA began managing them.

The present dispute arises out of PHA's procedure for terminating HOAs when homebuyers have not complied with their contractual obligations. In such cases, where homebuyers have breached the HOA, PHA has commenced eviction actions against those homebuyers in the Philadelphia Municipal Court. Philadelphia Municipal Court has jurisdiction over landlord/tenant actions pursuant to 42 Pa.C. S.A. § 1123(a)(3). PHA has commenced at least twelve such eviction actions against Turnkey III homebuyers in 1988, and it has stipulated that it will continue commencing eviction actions against homebuyers who breach the HOA.

Plaintiffs argue that PHA wrongfully considers Turnkey III homebuyers to be tenants. Rather, plaintiffs contend, the HOA establishes an installment land sale contract, and, as such, PHA may not commence eviction actions against homebuyers in the Philadelphia Municipal Court, but must eject homebuyers in an action to quiet title in the Court of Common Pleas.[3] In addition to arguing that PHA must proceed against Turnkey III homebuyers in the Court of Common Pleas, plaintiffs also seek to require PHA to give Pennsylvania Act 6 notice and Pennsylvania Act 91 notice to homebuyers before proceeding to evict or eject them.

"[Pennsylvania] Act 6 notice is designed, in part, to give the borrower the opportunity to cure any defaults that may have occurred in the loan agreement and to take advantage of various consumer protection devices extended by the Act before the [mortgaged] home is seized and sold by the sheriff." *Bennett v. Seave*, 520 Pa. 431, 554 A.2d 886, 892 (1989) (Papadakos, J., concurring). "[Pennsylvania] Act 91 notice is designed to give a homeowner the chance to apply for a state loan to help pay off the mortgage in situations where the homeowner cannot meet his mortgage payments because of unemployment, before foreclosure occurs." *Id.*

PHA argues that Act 6 and Act 91 do not apply because Turnkey III is a federal program that is not bound by state procedural

---

**3.** It is not clear whether actions to quiet title would be appropriate if the HOA does not permit PHA to proceed with eviction actions. Ordinarily, the plaintiff in an action to quiet title pursuant to Pa.R.Civ.P. 1061 must be in posses-

sion of the land in controversy. *Grossman v. Hill*, 384 Pa. 590, 122 A.2d 69, 72 (1956). If the plaintiff is not in possession, the sole remedy is an action in ejectment. *Id.*

law. *See United States v. Spears*, 859 F.2d 284 (3d Cir.1988) (The Farmers Home Administration is not bound to give Act 6 and Act 91 notice when foreclosing in federal court). I do not need to reach that question. The Turnkey III regulations provide that "in the event it should develop that the homebuyer no longer meets one or more of the elements of homeownership potential, the LHA shall investigate the circumstances and provide such counseling and assistance as may be feasible in order to help the family overcome the deficiency as promptly as possible." 24 C.F.R. § 904.107o. If Turnkey III homebuyers are eligible for Act 91 assistance, this regulation would require PHA to counsel homebuyers at least regarding Act 91 prior to commencing an eviction.

The crucial question in this case is whether Turnkey III homebuyers are tenants subject to eviction or whether they are sufficiently similar to mortgagors to require ejection in the Court of Common Pleas and Act 6 and Act 91 notice. Both parties in this case argue that Pennsylvania law is clear on this issue; however, both parties reach different conclusions.

Plaintiffs argue that the HOA creates an installment land sale contract or lease purchase agreement which falls under the protection of Act 6 and Act 91. Clearly, if the HOA creates an installment land sale contract, eviction in the Philadelphia Municipal Court would be improper and PHA would have to proceed in an action for ejectment in the Court of Common Pleas. It is less clear whether Act 6 and Act 91 would apply to an installment land sale contract or lease purchase agreement.

Act 91 specifically includes land sale contracts in its definition of the term "mortgage." Act 6 has been applied to land sale contracts by the Pennsylvania Superior Court in *Anderson Contracting Co. v. Daugherty*, 274 Pa.Super. 13, 417 A.2d 1227 (1979), *appeal dismissed*, 492 Pa. 630, 425 A.2d 329 (1980). However, *Anderson* recognized that its holding was contrary to the opinion of the Attorney General, who concluded that the requirement of Act 6 that the obligation be secured by a lien was

not satisfied where the vendor simply retained title. *Id.*, 417 A.2d at 1231 n. 4, *citing* 68 D & C 355 (1974). This question has never been resolved by the Pennsylvania Supreme Court.

In support of the assertion that the HOA creates an installment land contract, the plaintiffs cite *Cuyahoga Metropolitan Housing Authority v. Watkins*, 23 Ohio App.3d 20, 491 N.E.2d 701 (1984). That decision of the Court of Appeals of Ohio interpreted the HOA agreement under Ohio law. While *Cuyahoga* is persuasive authority that a state court *could* interpret the HOA to create an installment land sale contract, it is not persuasive authority to determine how the Pennsylvania Supreme Court would decide the issue under Pennsylvania law.

PHA is quick to point out the language in the HOA and in the regulations which suggests that a homebuyer has the status of a tenant with an option to purchase. Indeed, Part II, Section three of the HOA states that "[u]ntil the Homebuyer satisfies the conditions ... precedent to the exercise of his option to purchase the Home for the applicable purchase price, the Homebuyer shall have the status of a lessee of the Authority from month to month...." This language, and other language in the regulations and the HOA, suggest that the HOA does not create an installment land sale contract.

This ambiguity resulting from the application of Pennsylvania law to the HOA creates a problem for this Court. If I hold that PHA must give Act 6 and Act 91 notice, there is a risk that the Commonwealth might not offer Act 91 assistance to Turnkey III homebuyers, and that the rights explained in the Act 6 notice might not apply to Turnkey III homebuyers. Homebuyers facing eviction will not be assisted by receiving misleading notices from PHA that do not apply. If I hold that PHA is not required to give Act 6 and Act 91 notice to Turnkey III homebuyers, I will foreclose the Pennsylvania courts from deciding this issue as it applies to Turnkey III residents in Philadelphia. *See Delaware Valley Citizens' Council for Clean Air v.*

*Commonwealth of Pennsylvania,* 755 F.2d 38 (3d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985) (consent decree approved by federal district court may not be collaterally attacked in state court on underlying state law issue). Such a ruling would prevent Turnkey III homebuyers in Philadelphia from receiving assistance that Pennsylvania might determine is available to them because such notice must be given before applying for such assistance. *See* 16 Pa.Code § 40.203.

■ Because of the ambiguities created by applying Pennsylvania law to the HOA, I am forced to invoke the doctrine of *Pullman* abstention.[4] In *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court held that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). "*Pullman* abstention is limited to uncertain questions of state law because '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Id., quoting Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

Turnkey III residents do not fit the traditional definition of mortgagors or tenants under Pennsylvania law. An examination of the HOA reveals that a Turnkey III homebuyer is a hybrid of a mortgagor and a tenant; the HOA is most similar to a lease/purchase agreement. Even if the Court accepts *Anderson* as the settled law of Pennsylvania, the law is still unclear

regarding the applicability of Act 6 and Act 91 to Turnkey III homebuyers. *Anderson* held that installment land sale contracts were mortgages under Act 6 and Act 91. Under Pennsylvania law, it is not clear whether the HOA is an installment land sale contract, and if it is not, whether a Turnkey III homebuyer may still be entitled to notice under Act 6 and Act 91.

If the issue of whether Act 6 and Act 91 apply to Turnkey III homebuyers is resolved, the constitutional issue may be avoided. If Turnkey III homebuyers are not entitled to notice under Act 6 and Act 91, the constitutional issue is avoided; the PHA cannot constitutionally be required to provide inapplicable notices in this case. Furthermore, if Act 6 and Act 91 apply to Turnkey III homebuyers, the Court has no reason to believe that the parties would be unable to resolve the remaining issues without further judicial intervention.

■ Abstention is also proper in the present case under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny. *Younger* abstention does not require the federal district court to retain jurisdiction.[5] *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Essentially, *Younger* abstention is proper in the context of a noncriminal proceeding when "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Id.,* 107 S.Ct. at 1526.

*Middlesex County Ethics Committee v. Garden State Bar Assn.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) establishes a three part test to apply before abstaining under *Younger.* First, there must be

---

**4.** Abstention under *Pullman* allows the Court to stay the federal proceeding pending resolution of the unsettled issues of state law by the state courts; it generally does not allow the federal district court to dismiss the case. *American Trial Lawyers Assn. v. New Jersey Supreme Court,* 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973).

**5.** Unlike *Pullman* abstention, where the court merely stays the action pending a state court determination, *Younger* abstention allows the

court to dismiss the action. Where abstention is justified under *Pullman* and another type of abstention which allows dismissal of the case, the applicability of *Pullman* does not require that the court choose to stay and the action may be dismissed. *See, Northern Virginia Law School, Inc. v. City of Alexandria,* 680 F.Supp. 222, 227 n. 5 (E.D.Va.1988); *Northeast Mines, Inc. v. Town of Smithtown,* 584 F.Supp. 112 (E.D.N.Y.1984); *Accident Fund v. Baerwaldt,* 579 F.Supp. 729, 732 n. 5 (W.D.Mich.1984).

an ongoing state judicial proceeding; second, the state proceedings must implicate important state interests; and third, there must be an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex County,* 457 U.S. at 432, 102 S.Ct. at 2521. In addition to abstaining when proceedings implicate important state interests, *Younger* abstention is appropriate to avoid unwarranted determination of federal constitutional questions. *Pennzoil,* 481 U.S. at 11, 107 S.Ct. at 1526.

All three prongs of the test are met in the present case. First, the PHA has instituted eviction proceedings against all the named plaintiffs, and those eviction proceedings are ongoing. This much is admitted by the plaintiffs in the Complaint.

Second, the eviction proceedings in the state court implicate important state interests. The Commonwealth has an important interest in determining who should receive financial assistance from the state funded public assistance programs. In the present case, this Court has been asked to direct the PHA to provide Act 91 notices to Turnkey III homebuyers facing termination of their HOA. The Act 91 notice allows the recipient to apply for loans from the Commonwealth to meet mortgage payments before a foreclosure occurs; without such notice an individual may not apply for such assistance. Significantly, the Commonwealth has not yet determined whether any such assistance should be made available to Turnkey III homebuyers. Therefore, a decision by this Court solely on the notice issue would interfere with the Commonwealth's interest in determining who should receive financial assistance from state funded programs.[6]

*Younger* abstention may also be appropriate when unwarranted determinations of federal constitutional questions may be avoided. "When federal courts interpret state statutes in a way that raises federal constitutional questions, 'a constitutional determination is predicated on a reading of the statute that is not binding on state courts [in other cases] and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless.'" *Id., quoting Moore v. Sims,* 442 U.S. 415, 428, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979).

In the present case, this Court has been asked to determine whether Act 6 and Act 91 are applicable to Turnkey III residents. There is evidence on both sides of this issue, but there is no controlling rule of state law to guide this Court. Therefore, deciding this issue would either preclude the state courts from considering this question as it concerns Turnkey III homebuyers in Philadelphia if I hold that the Acts do not apply, *see Delaware Valley Citizen's Council,* 755 F.2d at 42, or it would raise potentially unnecessary constitutional questions regarding PHA's due process obligations under the Fourteenth Amendment if I hold that the Acts do apply.

The third part of the test, that the plaintiffs have an adequate opportunity in the state proceedings to raise constitutional questions, is also satisfied. The PHA presently initiates actions against Turnkey III residents in Philadelphia Municipal Court as evictions. The arguments raised by the plaintiffs in this Court may be raised in those proceedings. In addition, if the Philadelphia Municipal Court refuses to hear those arguments, or if a decision adverse to the plaintiffs is rendered by that court, the plaintiffs may appeal to the Philadelphia County Court of Common Pleas pursuant to Rule 300 of that Court.

The plaintiffs assert that proceeding in Philadelphia Municipal Court does not afford an adequate opportunity to raise the constitutional issues because, if plaintiffs are successful in the Philadelphia Municipal Court, that court would only be able to dismiss PHA's eviction action and would not be able to give the plaintiffs the affirmative relief requested. I do not agree. If

---

**6.** It should also be noted that the plaintiffs argue the Philadelphia Municipal Court is without jurisdiction in eviction actions against Turnkey III homebuyers and the proper forum for such actions is the Court of Common Pleas. This argument raises the precise issue the Supreme Court recognized as an important state interest in *Middlesex County.* "Proceedings necessary ... for the functioning of the state judicial system ... evidence the state's substantial interest in the litigation." *Middlesex County,* 457 U.S. at 432, 102 S.Ct. at 2521.

the Philadelphia Municipal Court and/or the Court of Common Pleas held that Act 6 and Act 91 were applicable and that eviction was improper, nothing in the record suggests that the PHA would not comply with such an order as to all Turnkey III residents. Moreover, assuming that the PHA continued to proceed in Philadelphia Municipal Court despite having eviction actions against Turnkey III residents dismissed, the plaintiffs are free to seek the same relief as a class action in the state courts or to return to federal court after the state law issues have been resolved and only constitutional issues remain.

For the reasons stated, this Court will abstain from hearing this case, and the Complaint will be dismissed without prejudice to the plaintiffs' right to return to federal court after the state law issues have been resolved.

An appropriate Order follows.

### ORDER

AND NOW, to wit, this 27th day of June, 1989, upon consideration of the Motion of the plaintiffs, Michelle Ayers, Carlton Ayers and Sadie Noland, for a Preliminary Injunction, and the Motion of the Defendants, Philadelphia Housing Authority, Mary Echols and Gregory A. Kern (hereinafter "PHA"), to Dismiss the Complaint, and after a hearing held on January 6, 1989, and good cause appearing, the Court having found that abstention is appropriate in this case, IT IS ORDERED that:

1. The Motion of the plaintiffs, Michelle Ayers, Carlton Ayers and Sadie Noland, for a Preliminary Injunction is denied; and,

2. The Motion of the Defendants, Philadelphia Housing Authority, Mary Echols and Gregory A. Kern (hereinafter "PHA"), to Dismiss the Complaint is granted; the Complaint is dismissed without prejudice to the right of the plaintiffs to refile this case in state court or to refile the case in federal court after the state law issues have been resolved.